Curtis C. Jung, Esq. (State Bar No. 130657)
JUNG & YUEN, LLP
888 South Figueroa Street, Suite 720
Los Angeles, California 90017
(213) 689-8880 - Tel
(213) 689-8887 - Fax
curtis@jyllp.com

Elmer Dean Martin III (State Bar No. 75517)
Elmer Dean Martin III, A Professional Corporation
1300 Valley Vista Drive, Suite 201
Diamond Bar, CA 91765
Telephone: 909-861-6700
elmer@bankruptcytax.net
Counsel for Creditor East West Bank

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## RIVERSIDE DIVISION

| | |
|---|---|
| In re | CASE NO.  6:18-bk-19730-WJ |
| VARIO CORP.,<br>　　　　Debtor. | Chapter 11 |
| | East West Bank's Objection to Debtor's Motion for Use of Cash Collateral; Declarations of Frank Chan and Elmer Dean Martin III |
| | <u>Hearing</u><br>Date: January 8, 2019<br>Time: 3:30 PM<br>Place: Courtroom 304<br>3420 Twelfth Street<br>Riverside, CA 92501 |

East West Bank ("EWB") objects to the Debtor's motion for use of cash collateral because there is no credible evidence that East West Bank will be afforded adequate protection within the meaning of Title 11 U.S.C. §§363(c)(2)(B), 363(e) and

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

361.  EWB is a depositary and lending institution the accounts of which are insured by the Federal Deposit Insurance Corporation.  EWB is acknowledged by Debtor to be a lien creditor of the Debtor loaning to Debtor under a revolving loan secured by a lien on Debtor's inventory, accounts receivable and general intangibles and claiming a first in priority lien on those assets.

It has become apparent that Debtor has engaged in deceptive conduct and that its representations are not reliable.  EWB considered stipulating to use by Debtor of certain portions of its cash collateral under certain specified and limited conditions if John Menchaca[1] was appointed as Chief Reorganization Officer so that EWB could receive reliable financial information.  Debtor's counsel indicated acceptance of that proposal.  EWB conditioned any use of cash collateral on its consideration and acceptance of information regarding Debtor's operations provided by Mr. Menchaca. Debtor's response was to terminate Debtor's counsel and hire the presently appearing counsel.   This history is indicated in the terminated counsel's employment application, Docket 7, the pertinent pages of which are attached as Exhibit 1 hereto, which also represents that counsel determined that EWB was undersecured.

After the Debtor's bankruptcy case was commenced it has been disclosed that while Debtor was presenting collateral base borrowing certificates to EWB representing that it owned accounts receivable, Debtor was selling 105% of its accounts receivable to factoring firms.  The most recent collateral borrowing base certificate is attached as Exhibit 2 hereto.  The schedule of factor sales and sample factor contract pages provided by Debtor's terminated counsel are attached as Exhibit 3.  The person who is managing Debtor, Eva Shih, is the person who approved the sale of accounts and guaranteed repayment to the factors and who is also the person who signed the collateral borrowing base certificates presented to EWB and who has guaranteed repayment of Debtor's debt to EWB.  Eva Shih obviously has a conflict

---

[1] John Menchaca is a California certified public accountant and a member of the Chapter 7 trustee panel for the Central District of California.

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909) 861-6700

of interest having sold and encumbered the same borrowing base twice and accepted personal liability for repayment. Debtor's manager, her husband, and an apparent relative to whom they have transferred assets recently, will soon be defendants in a suit commenced by EWB in state court.

It has also been disclosed that the $1,900,000 paid to an entity named "Grand Wisdom" mentioned in the Debtor's motion has been paid not to a manufacturer. Grand Wisdom acts in an undisclosed manner to merely forward orders to manufacturers. Exhibit 4. The PDF documents purporting to represent orders and deposits involving Grand Wisdom presented to EWB contain metadata which indicate that they were recently created and backdated. Exhibit 5 hereto. The wire transfers which have cleared EWB's accounts on behalf of Debtor indicate a history with Grand Wisdom which began not in 2018 as indicated in Debtor's motion, but in no later than early in 2017 according to EWB records readily available at this time. Exhibit 6 hereto.

Grand Wisdom has always been located in Taiwan and the Motion's representation that connections with Grand Wisdom are part of Debtor's current move to Taiwan ignores the long history which Debtor has with Grand Wisdom in Taiwan.

A review of the transfers from EWB accounts indicate many transfers to an entity named JiangXi TaiLong Optronics Corp. The state court complaint filed by Debtor against Adam McFarlane, mentioned in Debtor's motion, reveals that JiangXi is apparently a Chinese alter ego of Debtor. See Exhibit 7 hereto. Accordingly Debtor has been dealing with itself without disclosure to EWB.

Contrary to the representations in the Debtor's motion about lost sales. the Borrowing Base Certificates indicate a continuing similar level of receivables and as of May 2018 the audited financial statements indicate no unusual events. Exhibit 8 hereto at page 14 note 9. The financial statements do disclose that while Debtor was drawing down $1,238,830 on its bank line of credit in 2017 it was paying insiders half of that amount. Exhibit 8 hereto at page 6.

1    Debtor represents that unless it uses cash collateral to pay Grand Wisdom more

2   than the $1,900,000 which Grand Wisdom has already received, the $1,900,000,

3   which is represented to be a $900,000 "security deposit" and $1,000,000 for

4   prepayment of inventory, will be forfeited.  None of this makes any sense.  There is

5   no explanation why the money already deposited cannot be used to pay for inventory

6   to the extent of the deposit.  There are no contractual terms presented which in any

7   manner assures that what Debtor predicts as to delivery will occur.

8    The purchase orders presented as Exhibit 2 of the Debtor's motion cannot be

9   confirmed and are presented for the first time to EWB even though dated back to the

10   beginning of this month when Debtor started talking with EWB about use of cash

11   collateral.  There is no information given which would allow confirmation of those

12   orders.  As to Walmart the orders are not credible because the Debtor represents that

13   those orders were interfered with by Adam McFarlane whose home address is also in

14   Walmart's headquarter city.

15    The proposed budget indicates a net deficit of $215,146 through May of 2019

16   while contending that inventory and accounts receivable will be stable in amount

17   through the end of 2019.  The budget proposes no payments to factoring companies

18   who likely are not going to sit idly by while EWB gets paid and the Debtor runs losses

19   from operations.

20    Quantitatively and qualitatively the Debtor's representations, valuations,

21   projections, and documents do not rise to the level of adequate protection for EWB's

22   present collateral.  The representation that "if Debtor pays another $1 million, it will

23   receive inventory of $2 million which will retail at a 30% markup.  However, without

24   that payment, the entire $1.9 million will be forfeited" makes no sense.  It's not even

25   good arithmetic.  For a payment of $1,000,000 and application of the deposit of

26   $1,900,000, a total of $2,900,000, the Debtor will get $2,600,000 gross with that

27   further reduced by the operational costs by a Debtor which historically breaks even?

28   What is the benefit from this?  East West Bank doesn't see any credible evidence that

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

-4-

this projection in light of the past performance and present troubles of the Debtor indicates that East West Bank is receiving the "indubitable equivalent" of what it already has.

The Debtor should just ask Grand Wisdom to apply the $1,900,000 toward the purchase of goods, or at least explain why that is not possible. The valuation put on the tools, machines and patents is totally unsubstantiated and unrealistic. Whether the Debtor owns any of the receivables which its factors think that they own is likely to be debated. There is no evidence that the assets relied on for adequate protection to justify use of cash are the "indubitable equivalent" of cash.

EWB has proposed and commenced proceedings for a Rule 2004 examination of the circumstances involved in this case. Exhibit 9 hereto. Included in the scope of the examination is the current law firm representing the Debtor to the extent of inquiry into how it is presently getting paid and whether in effect it is representing Eva Shih or the Debtor and not the Debtor In Possession.

In the meantime, use of cash collateral should be limited to payment of rent, utilities and salaries of persons necessary for collection of accounts and sale of present inventory. EWB will be moving for appointment of a Chief Reorganization Officer or in the alternative Chapter 11 trustee or in the alternative Chapter 7 conversion in the absence of consent to such an arrangement because the Debtor has demonstrated repeatedly that it cannot be relied on for accurate information as to its financial dealings and it is apparent from the information currently available that it is probable that present management would have to sue itself as part of its fiduciary obligations and that is not likely to happen.

Submitted this 28th day of December 2018

Elmer Dean Martin III, A Professional Corporation
/s/ Elmer Dean Martin III
By: Elmer Dean Martin III
Counsel for Creditor East West Bank

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

c:/winword/pleadings/1t5613

1

**Attachment List**

2

| | Description | Page Numbers |
|---|---|---|
| Attachment 1 | Declaration of Frank Chan in Support of East West Bank's Objection to Debtor's Motion for Use of Cash Collateral | 8-10 |
| Attachment 2 | Declaration of Elmer Dean Martin III in Support of East West Bank's Objection to Debtor's Motion for Use of Cash Collateral | 11-13 |
| Exhibit 1 | Portion of Docket No. 7 filed in the above captioned case– Notice of and Application to Employ Law Offices of Langley and Chang as general Bankruptcy Counsel for Debtor in Possession for Limited Time Period | 14-16 |
| Exhibit 2 | A true and correct copy of the most recent collateral base borrowing certificate | 17-17 |
| Exhibit 3 | True and correct copies of the schedule of factor sales and sample factor contracts | 18-25 |
| Exhibit 4 | True and correct copies of emails between Elmer Martin and Debtor's former counsel Law Offices of Langley and Chang regarding Grand Wisdom | 26-29 |
| Exhibit 5 | True and correct copies of statements regarding orders and deposits involving Grand Wisdom | 30-36 |
| Exhibit 6 | True and correct copies of the Wire Summary Reports between January 1, 2017 and December 31, 2018 | 37-42 |

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

| Exhibit 7 | Portion of Complaint filed in the Superior Court for the State of California for the County of San Bernardino, Case No. CIVDS1823376 | 43-45 |
| Exhibit 8 | A true and correct copy of Debtor's financial statement | 46-62 |
| Exhibit 9 | A true and correct copy of a December 20, 2018 letter | 63-67 |

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

c:/winword/pleadings/1t5613

1  Curtis C. Jung, Esq. (State Bar No. 130657)
2  JUNG & YUEN, LLP
   888 South Figueroa Street, Suite 720
3  Los Angeles, California 90017
   (213) 689-8880 - Tel
4  (213) 689-8887 - Fax
5  curtis@jyllp.com

6

7  Elmer Dean Martin III (State Bar No. 75517)
   Elmer Dean Martin III, A Professional Corporation
8  1300 Valley Vista Drive, Suite 201
9  Diamond Bar, CA 91765
   Telephone: 909-861-6700
10 elmer@bankruptcytax.net
11 Counsel for Creditor East West Bank

12

13

14        **UNITED STATES BANKRUPTCY COURT**
15        **CENTRAL DISTRICT OF CALIFORNIA**
              **RIVERSIDE DIVISION**
16

17 In re                          CASE NO.  6:18-bk-19730-WJ

18 VARIO CORP.,                    Chapter 11
19            Debtor.
                                   Declaration of Frank Chan in Support of
20                                 East West Bank's Objection to Debtor's
                                   Motion for Use of Cash Collateral
21

22

23                                 Hearing
                                   Date: January 8, 2019
24                                 Time: 3:30 pm
25                                 Place: Courtroom 304
                                   3420 Twelfth Street
26                                 Riverside, CA 92501

27      I, Frank Chan, declare as follows:

28      1.      I have personal knowledge of the matters set forth in this declaration and,

*Left margin (vertical):* ELMER DEAN MARTIN III / POST OFFICE BOX 4670 / DIAMOND BAR, CALIFORNIA 91765 / (909)861-6700

-1-

if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Debtor's obligations to and transactions with East West Bank that are the subject of this Declaration because I am employed by East West Bank as Senior Vice President, Special Assets Group, and have previously had personal involvement with Debtor's obligations to EWB.

2. East West Bank is a depository and lending institution the accounts of which are insured by the Federal Deposit Insurance Corporation. East West Bank is creditor of the Debtor under a revolving loan agreement secured by a lien on Debtor's inventory, accounts receivable and general intangibles and claiming a first in priority lien on those assets.

3. I am one of the custodians of the books, records and files of East West Bank that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of East West Bank on behalf of East West Bank, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of East West Bank's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of East West Bank by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

4. East West Bank offered to consider stipulating to use by Debtor of certain portions of its cash collateral under certain specified and limited conditions if John Menchaca was appointed as Chief Reorganization Officer so that East West Bank could receive reliable financial information. East West Bank conditioned any use of cash collateral on its consideration and acceptance of information regarding Debtor's operations provided by Mr. Menchaca. Debtor's former counsel indicated

ELMER DEAN MARLIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

acceptance of that proposal. Debtor's response was to terminate Debtor's former counsel and hire the counsel presently appearing for Debtor.

5. This declaration is offered in support of East West Bank's Objection to Debtor's Motion for Use of Cash Collateral.

6. Attached as Exhibit 2 to East West Bank's Objection to Debtor's Motion for Use of Cash Collateral is a true and correct copy of the most recent collateral base borrowing certificate given by Debtor to East West Bank;

7. Attached as Exhibit 6 to East West Bank's Objection to Debtor's Motion for Use of Cash Collateral are true and correct copies of the Wire Summary Reports between January 1, 2017 and December 31, 2018 which list the wire transfers out of two accounts maintained by Debtor at East West Bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed December 28, 2018 at Pasadena, California

Frank Chan
Senior Vice President, Special Assets Group
East West Bank

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

Curtis C. Jung, Esq. (State Bar No. 130657)
JUNG & YUEN, LLP
888 South Figueroa Street, Suite 720
Los Angeles, California 90017
(213) 689-8880 - Tel
(213) 689-8887 - Fax
curtis@jyllp.com

Elmer Dean Martin III (State Bar No. 75517)
Elmer Dean Martin III, A Professional Corporation
1300 Valley Vista Drive, Suite 201
Diamond Bar, CA 91765
Telephone: 909-861-6700
elmer@bankruptcytax.net
Counsel for Creditor East West Bank

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**RIVERSIDE DIVISION**

| | |
|---|---|
| In re | CASE NO.  6:18-bk-19730-WJ |
| VARIO CORP.,<br>　　　　　　Debtor. | Chapter 11 |
| | Declaration of Elmer Dean Martin III in Support of East West Bank's Objection to Debtor's Motion for Use of Cash Collateral |
| | <u>Hearing</u><br>Date: January 8, 2019<br>Time: 3:30 pm<br>Place: Courtroom 304<br>3420 Twelfth Street<br>Riverside, CA 92501 |

I, Elmer Dean Martin III, declare and state as follows:

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909)861-6700

-1-

1.  I am one of the lawyers representing East West Bank ("EWB") in the above captioned case.

2.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding the interest of EWB, in the above case because I am retained by EWB as its counsel in the case in which this declaration is offered and personally have been involved in the matters relevant to this declaration.

3.  I am the custodian of the books, records and files of Elmer Dean Martin III, A Professional Corporation that pertain to the above captioned case.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge. The records referenced herein were made at or about the time of the events recorded, and which are maintained in the ordinary course of Elmer Dean Martin III, A Professional Corporation's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Elmer Dean Martin III, A Professional Corporation by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the Court if required.

4.  This declaration is offered in support of East West Bank's Objection to Debtor's Motion for Use of Cash Collateral.

5.  Attached as Exhibit 3 to East West Bank's Objection to Debtor's Motion for Use of Cash Collateral are true and correct copies of the schedule of factor sales and sample factor contracts provided by Debtor's former counsel, Law Offices of Langley and Chang;

6.  Attached as Exhibit 4 to East West Bank's Objection to Debtor's Motion for Use of Cash Collateral are true and correct copies of emails between me and

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909) 861-6700

1   Debtor's former counsel Law Offices of Langley and Chang regarding Grand

2   Wisdom;

3       7.  Attached as Exhibit 5 to East West Bank's Objection to Debtor's Motion

4   for Use of Cash Collateral are true and correct copies of statements regarding orders

5   and deposits involving Grand Wisdom provided by Debtor's former counsel Law

6   Offices of Langley and Chang.

7       8.  Attached as Exhibit 8 to East West Bank's Objection to Debtor's Motion

8   for Use of Cash Collateral is a true and correct copy of Debtor's financial statement

9   provided to me by Debtor's former counsel Law Offices of Langley and Chang.

10      9.  Attached as Exhibit 9 to East West Bank's Objection to Debtor's Motion

11  for Use of Cash Collateral is a true and correct copy of a letter which I mailed to the

12  persons indicated therein.

13      I declare under penalty of perjury under the laws of the United States of

14  America that the foregoing is true and correct.

15  Executed at Diamond Bar, California on December 28, 2018

16

17          Elmer Dean Martin III, A Professional Corporation
    /s/ Elmer Dean Martin III

18          By: Elmer Dean Martin III

19          Counsel for Creditor East West Bank

20

21

22

23

24

25

26

27

28

ELMER DEAN MARTIN III
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909) 861-6700

c:/winword/pleadings/1t5616

Objection Page 0013

Steven P. Chang – SBN 221783
Christopher J. Langley – SBN 258851
Donald W. Reid – SBN 281743 (Of Counsel)
Charity J. Manee – SBN 286481 (Of Counsel)
**LAW OFFICES OF LANGLEY AND CHANG**
4158 14th Street
Riverside, California 92501
(951) 383-3388
schang@spclawoffice.com
chris@langleylegal.com
don@rmbklaw.com
charity@rmbklaw.com

Proposed Counsel for Vario Corp.,
Debtor and Debtor in Possession for limited period

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>VARIO CORP.,<br><br>    Debtor in Possession, | Case No. 6:18-bk-19730 WJ<br><br>Chapter 11<br><br>**NOTICE OF AND APPLICATION TO EMPLOY LAW OFFICES OF LANGLEY AND CHANG AS GENERAL BANKRUPTCY COUNSEL FOR DEBTOR IN POSSESSION FOR LIMITED TIME PERIOD**<br><br>**DECLARATION OF CHRISTOPHER J. LANGLEY IN SUPPORT THEREOF** |

**TO THE HONORABLE WAYNE E. JOHNSON, U.S. BANKRUPTCY JUDGE, OFFICE OF THE U.S. TRUSTEE, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** this Motion is filed by the Debtor pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing. The Motion is included herewith, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response and request for hearing with the court and

1

1    serve it as stated above, no later than 14 days after the date stated on the Proof of Service of this

2    Motion plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P.

3    5(b)(2)(D), (E), or (F). Your opposition must comply with LBR 9013-1(f) and (o).

4          The Law Offices of Langley & Chang ("Firm") hereby files this application to be

5    employed pursuant to 11 U.S.C. § 327 as general counsel for Vario Corp. ("Debtor"), the chapter

6    11 debtor and debtor in possession in the above-captioned case, from the limited time period of

7    November 16, 2018 through December 11, 2018, as follows:

8          1.    The Debtor, represented by the Firm, commenced this bankruptcy case by filing a

9    voluntary chapter 11 bankruptcy petition on November 16, 2018 (the "Petition Date").

10         2.    The Debtor continues to manage his financial affairs as a debtor in possession

11   pursuant to 11 U.S.C. §§ 1107, 1108.

12         3.    The Debtor is in the business of designing, engineering, and producing efficient

13   and environmentally friendly LED lighting products and is headquartered in Chino, California.

14         4.    The Firm represented the Debtor during the first four weeks of the bankruptcy

15   case. While no pleadings have been filed, the Firm worked extensively behind the scenes

16   attempting to negotiate a global compromise with the Debtor's principal creditor, East West

17   Bank ("EWB"), which the Firm believes holds a first-priority, under-secured lien against

18   substantially all the Debtor's assets.

19         5.    The Debtor retained the Firm to file a chapter 11 bankruptcy case with hopes that

20   a reorganization was possible. The Firm was retained on November 9, 2018, one week before

21   the Petition Date. Prior to the Petition Date, the Firm focused on understanding the Debtor's

22   financial affairs and preparing its bankruptcy schedules. While preparing an emergency motion

23   to use cash collateral, the Firm reviewed the Debtor's prior year financial statements and

24   determined the Debtor did not earn enough revenue historically to service the secured debt

25   payments that would need to be made under a chapter 11 plan. In addition, the Debtor provided

26   the Firm financial projections showing the Debtor would incur an immediate loss of

27   approximately $300,000 during the first four months of the case as it migrated its manufacturing

28   from China to Taiwan to avoid the tariffs imposed by the US-China trade war. Finally, the Firm

2

1  learned from the Debtor its most valuable scheduled asset, deposits for future inventory

2  purchases (valued at $1,947,533), was non-refundable and only recoverable if the Debtor paid

3  another $1 million for future inventory purchases, in which case the Debtor would receive $2

4  million in inventory shipments.  Absent further investment of $1 million, the inventory deposits

5  were non-refundable.

6      6.    In sum, the Firm quickly determined that EWB was an under-secured creditor

7  and that any administration of this chapter 11 bankruptcy estate would require the cooperation

8  and consent of EWB.  The Firm proposed to EWB an orderly wind-down of the Debtor's

9  business that would have (i) sold its remaining inventory and collected its remaining AR through

10  ordinary operations over a matter of months, (ii) auctioned its remaining fixed assets after

11  operations ceased, and (iii) pursued litigation claims for the benefit of the bankruptcy estate.  In

12  exchange for EWB stipulating to the Debtor's use of cash collateral, the Firm proposed offering

13  EWB a replacement lien on all assets, including the estate's (previously unencumbered)

14  avoidance actions, subject to a carve-out for the benefit of the bankruptcy estate and unsecured

15  creditors.  The Firm believed this proposal was for the benefit of all interested parties, including

16  EWB and unsecured creditors.

17      7.    Therefore, during the first four weeks of the bankruptcy case, the Firm attempted

18  to negotiate a cash collateral stipulation with EWB.  In response, EWB made numerous requests

19  for documentation and information, which the Firm did its best to provide and answer.  The Firm

20  kept EWB abreast of the Debtor's urgency to use cash collateral to, if nothing else, pay post-

21  petition wage claims of its non-insider employees by the upcoming pay date, December 7.

22  Unfortunately, EWB did not approach the Firm about a possible global agreement until

23  December 10, which would have, among other things, authorized the Debtor's interim use of

24  cash collateral and appointed a CRO or chapter 11 trustee.  By that time, however, the Debtor

25  had already shut down operations due to it not having authority to use EWB's cash collateral.

26      8.    The Debtor requested additional time to review EWB's proposal.  However, on

27  December 11, the Firm received a Substitution of Attorney signed by the Debtor and naming Lo

28

3

**Exhibit A**
**East West Bank - Asset Based Lending**
**Borrowing Base Certificate**

The undersigned certifies to East West Bank that:
The following accounts are true and correct as of          9/30/2018

**A. Accounts Receivable**

| | | | | |
|---|---|---|---|---|
| 1. Previous Accounts Receivable Ending Balance | | | $ | 2,293,848.30 |
| 2. Plus:   New sales as posted through: | 9/30/2018 | $ 1,319,792.84 | | |
| 3. Plus:   Other additions (debit adjustments, etc) | | $ - | | |
| 4. Total Additions:   (Line 2 + Line 3): | | | $ | 1,319,792.84 |
| 5. Less:   Collections as posted through | 9/30/2018 | $ 1,449,845.42 | | |
| 6. Less:   Credit memo, discounts, credit adjustments, etc | | $ 19,283.66 | | |
| 7. Total Deductions:  (Line 5 + Line 6) | | | $ | 1,469,109.08 |
| 8. Accounts Receivable as of: | 9/30/2018 | | $ | 2,144,531.86 |
| 9. Less: Ineligible Accounts Receivable | | | | |
| Over 90 Days from invoice date | $ 30,317.99 | | | |
| Cross-Aging > 25% | $ 8,386.40 | | | |
| Credit Memos > 90 Days from invoice date | $ - | | | |
| Affiliate/Inter-Company/Employee | | | | |
| Foreign Receivables | $ - | | | |
| Concentration > 25% | | | | |
| Concentration > 65% (Walmart and Sam's Club from August to January) | $ - | | | |
| Concentration > 50% (Walmart and Sam's Club from Febuary to July) | | | | |
| Concentration > 50% (Canadian Tire and Home Depot) | $ - | | | |
| C. O. D., etc. | $ - | | | |
| Contra Accounts | $ - | | | |
| Government | $ - | | | |
| Other Ineligibles | $ - | | | |
| Total Ineligible Accounts Receivable | | $ 38,704.39 | | |
| 10. Eligible Receivables | | $ 2,105,827.47 | | |
| 11. Times Rate of Advance (% of Line 10) | 75% | $ 1,579,370.60 | | |
| 12.   Total Eligible AR ($2,500,000 whichever is less) | $ 2,500,000 | | $ | 1,579,370.60 |

**B. Inventory**

| | | | | |
|---|---|---|---|---|
| 13. Gross Inventories  as of | 9/30/2018 | $ 2,102,136.71 | | |
| 14. Less: Ineligible inventory | | | | |
| Work in Progress | $ - | | | |
| Supplies | $ - | | | |
| Specialty Items | $ - | | | |
| Samples | $ - | | | |
| Obsolete Inventory | $ 209.07 | | | |
| Other Ineligibles | $ - | | | |
| Other Reserves | $ - | | | |
| Offsite Inventory | $ - | | | |
| Total Ineligible Inventory | | $ 209.07 | | |
| 15. Eligible Inventory | | $ 2,101,927.64 | | |
| 16. Times Rate of Advance (% of Line 15): | 50% | $ 1,050,963.82 | | |
| 17. Inventory : | | | | |
| December to April : 125% of A/R Availability Advance Rate | $ - | | | |
| May to November:  100% of A/R Availability Advance Rate | $ 1,579,371 | $ 1,579,371 | | |
| 18. Inventory cap $1,000,000 | $ 1,000,000 | $ 1,000,000 | | |
| 19. Inventory Borrowing Base ( Inventory Availability from Line 16, Line 17, and Line 18, whichever is less) | | | $ | 1,000,000.00 |
| 20. Total Eligible AR cap: $2,500,000, or Line 12 +Line 19, whichever is less) | | | $ | 2,500,000.00 |
| 21. East West Bank Obligations | | | | |
| Sight Letters of Credit | $ 91,200.00 | | | |
| Clean Advances /Revolving Working Capital | $ 2,340,159.38 | | | |
| 22. Total East West Bank Obligations as of: | 9/30/2018 | | $ | 2,431,359.38 |
| 23. Net Availability (Line 20 - Line 22) | | | $ | 68,640.62 |

*( Note: If Negative -- Repayment Required)*

The above listed collateral is subject to a security interest in favor of East West Bank pursuant to the terms of the Loan Agreement[s] executed between the Bank and the undersigned.  Borrower represents and warrants that inventory listed above is owned by Borrower free and clear of any and all liens and encumbrances other than said security interest in favor of East West Bank. The undersigned hereby warrants and represents to Bank that the Borrower is in full compliance with the Terms and Conditions of the Agreement, and related documents, that the collateral is bona fide and accurate, and certifies that the foregoing and any attachments to this report are true and correct.

Vario Corp.

_____
(Authorized initial)

President                                                              9/19/2018
_____                    _____
(Title)                                                                   (Date)

Objection Exhibit 2 Page 0017

| Date Funded | Funder's Name | Address | Loan Amount | Total Payback | Interest Rate | Daily Payment | Payment number | Pay-off Date | Paid Amount As of 11/09/18 | Outstanding Amount | % Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/25/2018 | Fora Financial West, LLC | 519 8th Avenue, 11th Floor New York, NY 10018-7748 | $350,000.00 | $479,500.00 | 37% | $2,339.03 | 205 | 3/8/2019 | $252,615.24 | $226,884.76 | 47% |
| 6/25/2018 | Kings Cash Group | 30 Broad Street, Suite 1201 New York, NY 10004 | $350,000.00 | $448,000.00 | 28% | $2,240.00 | 200 | 4/2/2019 | $208,370.00 | $239,630.00 | 53% |
| 7/20/2018 | TVT 2.0 LLC | 8 Hunters Ln, Brooklyn, NY 11576 | $225,000.00 | $330,750.00 | 47% | $2,337.00 | 142 | 2/4/2019 | $165,927.00 | $164,823.00 | 50% |
| 8/1/2018 | ML Factors Funding LLC | 456A Central Avenue, #128 Cedarhurst, NY 11516 | $250,000.00 | $350,000.00 | 40% | $3,182.00 | 110 | 1/2/2019 | $206,890.00 | $143,170.00 | 41% |
| 8/21/2018 | SPG Advance | 1221 McDonald Ave, Brooklyn, NY 11230 | $200,000.00 | $299,800.00 | 50% | $2,618.00 | 126 | 2/23/2019 | $88,669.94 | $211,130.06 | 70% |
| 9/12/2018 | Yellowstone Capital West, LLC | 116 Nassau Street, Suite 804 New York, NY 10038 | $110,000.00 | $164,890.00 | 50% | $1,648.00 | 100 | 1/31/2019 | $53,259.00 | $111,631.00 | 68% |
| 9/12/2018 | Influx Capital LLC | 32 Court Street, Suite 205 Brooklyn, NY 11201 | $50,000.00 | $74,950.00 | 50% | $1,071.00 | 70 | 12/19/2018 | $39,458.00 | $35,492.00 | 47% |
| 11/1/2018 | Business Merchant Funding | 680 Central Ave, Cedarhurst, NY 11516 | $175,000.00 | $262,325.00 | 50% | $3,498.00 | 75 | 2/14/2019 | $14,988.00 | $247,337.00 | 94% |
| 11/1/2018 | ACE Funding Source LLC | 366 North Broadway, Jericho, NY 11753 | $125,000.00 | $187,375.00 | 50% | $2,499.00 | 75 | 2/14/2019 | $8,994.00 | $178,381.00 | 95% |
| Total | | | $1,835,000.00 | $2,597,590.00 | | $21,432.03 | | | $1,039,111.18 | $1,558,478.82 | 60% |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/10/2018 | BMF (Paid off, refinanced) | 680 Central Ave, Cedarhurst, NY 11516 | $125,000.00 | $187,375.00 | 50% | $2,498.00 | 75 | 11/1/2018 | $187,375.00 | | |
| 10/11/2018 | ACE (Paid off, refinanced) | 366 North Broadway, Jericho, NY 11753 | $75,000.00 | $112,425.00 | 50% | $1,499.00 | 75 | 11/1/2018 | $112,425.00 | | |



ML FACTORS

## FUTURE RECEIVABLES AGREEMENT

This FUTURE RECEIVABLES AGREEMENT (this "Agreement"), dated July 27, 2018          is made by and between ML Factors
Funding Limited Liability Company, ("ML Factors"), and VARIO CORP.                                              ("Merchant").

| Merchant's Legal Name: | VARIO CORP. | | |
|---|---|---|---|
| DBA Name: | VARIO | | |
| Legal Entity: | Corporation | | |
| Address: 14020 CENTRAL AVE STE 590 | City: CHINO | State: CA | Zip: 91710 |

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to ML Factors (making ML Factors the absolute owner) in consideration of the purchase price specified below (the Purchase Price), the specified percentage specified below (the Specified Percentage) of all Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (collectively, the "Receipts", including all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the receipts purchased amount specified below (the Purchased Amount) has been delivered by or on behalf of Merchant to ML Factors. Merchant hereby acknowledges and agrees that ML Factors may elect, in its sole discretion, to pay to Merchant a percentage of the full Purchase Price specified below. If ML Factors elects to pay to Merchant less than the full Purchase Price specified below then the amount actually paid by ML Factors shall be deemed the Purchase Price for purposes of this transaction notwithstanding the Purchase Price specified below and the Purchased Amount shall automatically be reduced proportionately notwithstanding the Purchased Amount specified below. By signing this Agreement, Merchant expressly consents to be bound to the terms of this Agreement whether ML Factors, in its sole discretion, elects to pay the full Purchase Price specified below or a percentage thereof. Merchant further acknowledges that if ML Factors elects to pay a percentage of the full Purchase Price specified below, that such payment shall not be deemed a default under this Agreement, and that all other terms and conditions, specifically including but not limited to the Daily Amount, shall remain in effect except as otherwise provided herein. The Purchased Amount shall be paid to ML Factors by...in consideration of the purchase price specified below (the Purchase Price), the specified percentage) of all Merchant's...until the receipts purchased amount specified below (the Purchased Amount) has been delivered by or on behalf of Merchant to ML Factors. Merchant hereby acknowledges and agrees that ML Factors may elect, in its sole discretion, to pay to Merchant a percentage of the full Purchase Price specified below. If ML Factors elects to pay to Merchant less than the full Purchase Price specified below then the amount actually paid by ML Factors shall be deemed the Purchase Price for purposes of this transaction notwithstanding the Purchase Price specified below and the Purchased Amount shall automatically be reduced proportionately notwithstanding the Purchased Amount specified below. By signing this Agreement, Merchant expressly consents to be bound to the terms of this Agreement whether ML Factors, in its sole discretion, elects to pay the full Purchase Price specified below or a percentage thereof. Merchant further acknowledges that if ML Factors elects to pay a percentage of the full Purchase Price specified below, that such payment shall not be deemed a default under this Agreement, and that all other terms and conditions, specifically including but not limited to the Daily Amount, shall remain in effect except as otherwise provided herein. The Purchased Amount shall be paid to ML Factors by Merchant's irrevocably directing and authorizing that there be only one depositing bank account, which account must be acceptable to, and pre-approved by, ML Factors (the "Account") into which Merchant and Merchant's customers shall remit the Specified Percentage of the Merchants settlement amounts due from each Transaction, until such time as ML Factors receives payment in full of the Purchased Amount. Merchant hereby authorizes ML Factors to ACH Debit the Daily Amount (as specified below) from the Merchants Account on a daily basis and will provide ML Factors with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by ML Factors remains in the Account and will be held responsible for any fees incurred by ML Factors resulting from a rejected ACH attempt or an event of default. (See Appendix A) ML Factors is not responsible for any overdrafts or rejected transactions that may result from ML Factors ACH debiting the specified amounts under the terms of this agreement. ML Factors will debit the specific daily amount each business day. The Merchant shall deliver to ML Factors, no later than the 18th date of each month the bank statement for the Account in respect of the immediately preceding month. Within three business days of ML Factors receipt of the Merchants monthly bank statements, ML Factors shall reconcile the Merchants Account by either crediting or debiting the difference from or back to the Merchants Account so that the amount debited per month equals the Specified Percentage. If the Merchant fails to deliver the bank statement for the Account for any month, ML Factors shall consider that the specific remittances were equal to the Specified Percentage of the settlement amount due from each Transaction for such month. ML Factors may, upon Merchants request, adjust the amount of any payment due under this Agreement at ML Factors sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between ML Factors and Merchant, upon the violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A. For the avoidance of any doubt, each party to this Agreement acknowledges, agrees and understands that the transaction contemplated by this Agreement is a purchase and sale of future receivables and not a loan, and no party hereto intends for this Agreement to be, or to be deemed to be, a loan agreement. Accordingly, there is no interest payable hereunder and no mandated date on which amounts hereunder are due. Furthermore, the failure of the Merchant to make sales and the Merchant going out of business or bankrupt is, in and of itself, not an Event of Default under this Agreement. These are risks assumed by ML Factors. Neither the Merchant nor any affiliate of the Merchant, directly or indirectly, shall assert or attempt to assert at any time and in any forum that this Agreement is a loan agreement or that the transactions contemplated hereby are or should be characterized as loans.

| Purchase Price | Specified Percentage | Estimated Daily Amount | Receipts Purchased Amount |
|---|---|---|---|
| $250,000.00 | 10% | $3,182.00 | $350,000.00 |

THE TERMS AND CONDITIONS, THE "SECURITY AGREEMENT AND GUARANTY" AND THE "AUTHORIZATION AGREEMENT" ATTACHED
HERETEO, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

**MERCHANT**
BY: SHUCHUAN EVA SHIH                    X _____
                                                              (SIGNATURE)

OWNER #1: SHUCHUAN EVA SHIH           X _____      07/27/18
                                                              (SIGNATURE)                    (DATE)

OWNER #2:                                            X _____
                                                              (SIGNATURE)                    (DATE)

**ML Factors Funding Limited Liability**
BY:                                                       X _____
     (COMPANY OFFICER)                                (SIGNATURE)

Objection Exhibit 3 Page 0019



**KCG**
KINGS CASH GROUP

**30 BROAD STREET, SUITE 1201**
**NEW YORK, NY**
**10004**

## MERCHANT AGREEMENT

Agreement dated _June 13, 2018_____ between Kings Cash Group ("KCG") and the Merchant listed below ("MERCHANT")
(Month) (Day) (Year)

Business (Merchant) Legal Name: _VARIO CORP._____          State of Inc. / Org. : _CA___

Doing Business As: _VARIO CORPORATION / MELIO CREATION___    Federal Tax ID (EIN): _Redacted____

Entity Type: Corporation (✓) Limited Liability Company ( ) Sole Proprietorship ( ) Other ( )

Business Address: _14020 CENTRAL AVE #590___ City: _CHINO___ State: _CA___ Zip: _91710___

Mailing Address: _SAME AS ABOVE___ City: _____ State: _____ Zip: _____

| | |
|---|---|
| **Purchase Price:** $ 350,000.00 | |
| **Specified Percentage:** _15_ % **Specific:** _DAILY_ **Amount:** $ 2,240.00 | |
| **Purchased Amount:** $ 448,000.00 | |

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to KCG (making KCG the absolute owner) in consideration of the "Purchase Price" specified below, the "Specified Percentage" of all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or any other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to KCG.

**Merchant may use the Purchase Price solely for business purposes and not for personal, family or household purposes.** Merchant is selling a portion of a future revenue stream to KCG at a discount, not borrowing money from KCG.

There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by KCG. Merchant going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. KCG is entering into this Agreement knowing the risks that Merchant's business may slow down or fail, and KCG assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give KCG a reasonable and fair opportunity to receive the benefit of its bargain.

KCG will debit the Specific Amount each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, KCG (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as KCG receives payment in full of the Purchased Amount. If Merchant's bank is closed on a business day, then KCG will debit the Specific Amount for that day on

the next business day in addition to the regularly scheduled debit. Merchant hereby authorizes KCG to ACH debit the Specific Amount from the Account on a daily basis. KCG's payment of the Purchase Price shall be deemed the acceptance and performance by KCG of this Agreement. Merchant understands that it is responsible for ensuring that the Specific Amount to be debited by KCG remains in the Account and will be held responsible for any fees incurred by KCG resulting from a rejected ACH attempt or an Event of Default. KCG is not responsible for any overdrafts or rejected transactions that may result from KCG's ACH debiting the Specific Amount under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between KCG and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

**FOR THE MERCHANT (#1)** By: _SHUCHUAN EVA SHIH___          _EVA SHIH_
                        (Print Name and Title)                (Signature)

**FOR THE MERCHANT (#2)** By: _____          _____
                        (Print Name and Title)                (Signature)

**BY OWNER (#1)** By: _SHUCHUAN EVA SHIH___          _EVA SHIH_
                (Print Name and Title)                (Signature)

**BY OWNER (#2)** By: _____          _____
                (Print Name and Title)                (Signature)



## Agreement for the Purchase and Sale of Future Receipts

VARIO CORP./ MEILO CREATION, LLC                  VARIO CORP

Seller's Legal Name: _____  D/B/A: _____

Form of Business Entity. ☒ Corporation; ☐ Limited Liability Company; ☐ Partnership; ☐ Limited Partnership; ☐ Limited Liability Partnership; ☐ Sole Proprietorship; ☐ Other: _____

Street Address: 14020 CENTRAL AVE STE 590, City: CHINO _____, State: CA ___; Zip: 91710

Mailing Address: SAME AS ABOVE _____, City: _____, State: _____; Zip: _____

Primary Contact Name:  SHUCHUAN EVA SHIH _____  Title: _____

Time in Business: _____ Federal Tax ID Number: **Redacted**

Purchase Price: $225,000.00  Purchased Amount: $303,750.00  Average Monthly Sales: $_____
Specified Percentage: 15 ____ % Origination Fee: $0 _____(to be deducted from the Purchase Price)

Initial Daily Amount: $2,337.00 ___ (Average Monthly Sales x Specified Percentage / Average Business Days in a Calendar Month)

Account for the Deposit of All Future Receipts: Bank: *East West Bank*   *Routing:* **Redacted**.

Account No: **Redacted**

Effective, JULY 18 _____, 20 ⁱ⁸ Seller, identified above, hereby sells, assigns and transfers to TVT 2.0, LLC, located at 881 BAXTER DR | SUITE 100, SOUTH JORDAN, UT 84095 ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") until Buyer has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business. As payment for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above. Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer.

Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the Account and the ability to withdraw the Initial Daily Amount. If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

Agreement of Seller: By signing below Seller agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

Seller: VARIO CORP./ MEILO CREATION, LLC
_____
Agreed to by: ✗ _____ (Signature), its _____ (Title)

Seller: VARIO CORP./ MEILO CREATION, LLC
_____
Agreed to by: ✗ _____ (Signature), its _____ **(Title)**

Buyer: TVT 2.0, LLC

Agreed to by: _____ (Signature), its _____ (Title)

Initials: _____ Initials _____

TVT 2.0, LLC



## MERCHANT AGREEMENT

Agreement dated 08/30/2018 _____ between SPG Advance, llc ("SPG") and the merchant listed below ("the Merchant"). MERCHANT

### INFORMATION

Merchant's Legal Name: VARIO CORP

D/B/A: VARIO                          State of Incorporation / Organization: CA          SS #

Type of entity:   Corporation ☑ Limited Liability Company ☐ Limited Partnership ☐ Limited Liability Partnership ☐ Sole Proprietor ☐ Partnership

Physical Address: 14020 CENTRAL AVE STE 590     City: CHINO          State: CA     Zip: 91710

Mailing Address: 14020 CENTRAL AVE STE 590     City: CHINO          State: CA     Zip:

Date business started (mm/yy): 08/10/2012          Federal ID# Redacted

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to SPG (making SPG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (the "Total Gross Receipts") for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been remitted from the Merchant to SPG. Total Gross Receipts, hereinafter "Receipts", is defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business without subtracting any costs or expenses.

The Purchased Amount shall be paid to SPG by Merchant's irrevocably authorizing only one depositing account acceptable to SPG (the "Account") to remit the percentage of daily receipts specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as SPG receives payment in full of the Purchased Amount. Merchant hereby authorizes SPG to ACH Debit the specified remittances from the Merchant's bank account on a daily basis and will provide SPG with all required access codes to view the account, and monthly bank statements. Merchant understands that it is responsible for ensuring that the Specified Percentage to be debited by SPG remains in the account and will be held responsible for any fees incurred by SPG resulting from a rejected ACH attempt or an event of default. (See Appendix A). SPG is not responsible for any overdrafts or rejected transactions that may result from SPG's ACH debiting the specified amounts under the terms of this agreement. SPG will either (i) debit the Specified Percentage on a daily basis, or (ii) if a Specific Daily Amount is specified hereunder, then SPG shall debit the Specific Daily Amount on each business day, and upon Merchant's request, and receipt of the Merchant's monthly bank statements, SPG shall, on or about the fifteenth day of each month, reconcile the Merchant's account by either crediting or debiting the difference between the amount debited and the Specified Percentage, from or back to the Merchant's bank account so that the amount debited each month equals the Specified Percentage.   SPG also may, upon Merchant's request, adjust the amount of any payment due under this Agreement at SPG's sole discretion and as it deems appropriate.  Notwithstanding anything to the contrary in this Agreement or any other agreement between SPG and Merchant, upon violation of any provision contained in Section 1.11 of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

Purchase Price: $ 200,000.00     Specified Percentage 15   % Specific Daily Amount: $ 2498.33    Receipts Purchased Amount: $ 299,800.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT TERMS & CONDITIONS" AND THE "SECURITY AGREEMENT AND GUARANTY" ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.

**FOR THE MERCHANT (#1)**
By: SHUCHUAN EVA SHIH _____  ✗ _____ (Signature)   SIGN HERE
   (Print Name and Title)

**FOR THE MERCHANT (#2)**
By: _____  ✗ _____ (Signature)
   (Print Name and Title)

**OWNER/GUARANTOR #1**
By: SHUCHUAN EVA SHIH _____  ✗ _____ (Signature)   SIGN HERE
   (Print Name)

**OWNER/GUARANTOR #2**
By: _____  ✗ _____ (Signature)   SIGN HERE
   (Print Name )

If SPG elects to pay to merchant less than the full Purchase Price specified above then the amount actually paid by SPG shall be deemed the Purchase Price for purposes of this transaction notwithstanding the Purchase Price specified above and the Purchased amount shall automatically be reduced proportionally notwithstanding the Purchased amount specified above. By signing this agreement, merchant expressly consents to be bound to the terms of this agreement whether SPG, in its sole discretion, elects to pay the full Purchase Price specified above or a percentage thereof. Merchant further acknowledges that if SPG elects to pay a percentage of the full Purchase Prices specified above, that such payment shall not be deemed a default under this agreement, and that all other terms on conditions, specifically including in but not limited to the price, amounts and representations in effect except otherwise provided herein. Upon a written confirmation between both parties the specified daily amount may be revised in such an event as agreed upon. To the extent set forth herein, each of the parties is obligated upon its, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of the above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to perform its obligations (including payments) hereunder, and that the information provided herein and on all of the SPG documents, forms and recorded interviews is true, accurate and complete in all material respects. If any such information is false, or misleading, Merchant shall be deemed in breach of all agreements between Merchant and SPG, and SPG shall be entitled to all remedies available under law. SPG may produce a monthly statement reflecting the delivery of the Specified percentage of Receivables from Merchant via the bank designated pursuant to Section 1.1 below ("Processor") to SPG. An investigative or consumer report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes SPG, its agents and representatives and any credit reporting agencies engaged by SPG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit reports at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to SPG as a consequence of this Agreement or for SPG's ability to determine Merchant's eligibility to enter into any future agreement with Company.

ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A BASIS FOR A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

# YELLOWSTONE CAPITAL WEST, LLC

116 Nassau Street, Suite 804, New York, NY 10038

## SECURED MERCHANT AGREEMENT

CFL License Number
Redacted

This agreement, dated 8/30/2018, between YELLOWSTONE CAPITAL WEST, LLC ("YCW") and the merchant listed below (the "Merchant"):

Business Legal Name: VARIO CORP.

D/B/A: VARIO

Type of Entity: Corporation                    EIN #: Redacted

Physical Address: 14020 CENTRAL AVE, CHINO, CA 91710

Mailing Address: 14020 CENTRAL AVE, CHINO, CA 91710

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YCW (making YCW the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or any other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YCW (the "Agreement" or "Merchant Agreement").

The Purchased Amount shall be paid to YCW by Merchant's irrevocably authorizing only ONE depositing account acceptable to YCW (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YCW receives payment in full of the Purchased Amount. Merchant hereby authorizes YCW to ACH Debit the specified remittances from the Merchant's bank account on a daily basis and will provide YCW with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YCW remains in the account and will be held responsible for any fees incurred by YCW resulting from a rejected ACH attempt or an event of default. (See Appendix A). YCW is not responsible for any overdrafts or rejected transactions that may result from YCW's ACH debiting the specified amounts under the terms of this agreement. YCW may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YCW's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YCW and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $110,000.00 | 25% | $164,890.00 |

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "SECURITY AGREEMENT AND GUARANTY" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS AGREEMENT.

FOR THE MERCHANT #1
By:
Name: SHUCHUAN SHIH
Title: OWNER
SSN: Redacted

OWNER/GUARANTOR #1
By:
Name: SHUCHUAN SHIH
SSN: Redacted

FOR THE MERCHANT #2
By:
Name: N/A
Title:
SSN:

OWNER/GUARANTOR #2
By:
Name: N/A
SSN:

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YCW documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and YCW, and YCW shall be entitled to all remedies available under law. YCW may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YCW. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes YCW, its agents and representatives and any credit-reporting agency engaged by YCW, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull a credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to YCW as a consequence of this Agreement or for YCW's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

1507870

# INFLUX CAPITAL LLC

32 Court Street, Suite 205 Brooklyn, NY 11201

Ph. (718) 564-6484

## SECURED MERCHANT AGREEMENT

This Agreement, dated  September 4, 2018 , is between INFLUX CAPITAL ("ICL") and the merchant listed below (the "Merchant")

Business Legal Name: VARIO CORP

D/B/A: VARIO

Type of Entity (check one): ☑ Corporation ☐ LLC ☐ LP ☐ LLP ☐ Sole Proprietor      EIN #: <span style="color:red">Redacted</span>

Physical Address: 14020 CENTRAL AVE, CHINO, CA 91710

Mailing Address: 14020 CENTRAL AVE, CHINO, CA 91710

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to ICL (making ICL the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to ICL.

The Purchased Amount shall be paid to ICL by Merchant's irrevocably authorizing only ONE depositing account acceptable to ICL (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as ICL receives payment in full of the Purchased Amount. Merchant hereby authorizes ICL to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide ICL with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by ICL remains in the account and will be held responsible for any fees incurred by ICL resulting from a rejected ACH attempt or an event of default. (See Appendix A). ICL is not responsible for any overdrafts or rejected transactions that may result from ICL's ACH debiting the specified amounts under the terms of this agreement. ICL may, upon Merchant's request, adjust the amount of any payment due under this Agreement at ICL's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between ICL and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | Specific Amount: | PURCHASED AMOUNT: |
|---|---|---|---|
| $ 50,000.00 | 15  % | $ 1,071.00 | $ 74,950.00 |

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

| FOR THE MERCHANT #1 | OWNER/GUARANTOR #1 |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Name: SHUCHUAN EVA SHIH | Name: SHUCHUAN EVA SHIH |
| Title: OWNER | SSN: <span style="color:red">Redacted</span> |
| SSN: <span style="color:red">Redacted</span> | |

| FOR THE MERCHANT #2 | OWNER/GUARANTOR #2 |
|---|---|
| By: | By: |
| Name: | Name: |
| Title: OWNER | SSN: |
| SSN: | |

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of ICL documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and ICL, and ICL shall be entitled to all remedies available under law. ICL may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to ICL. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes ICL, its agents and representatives and any credit-reporting agency engaged by ICL, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to ICL as a consequence of this Agreement or for ICL's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

p1



# ACE FUNDING SOURCE

### AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIPTS

Seller's Legal Name: **VARIO CORP.,DEERPORT DECOR CORP., MEILO CREATION, LLC**

D/B/A: **VARIO**

Form of Business Entity:  ☑ Corporation  ☐ Limited Liability Company  ☐ Limited Partnership  ☐ Limited Liability Partnership  ☐ Sole Proprietor

Street Address: **14020 CENTRAL AVE STE 590**   City: **CHINO**   State: **CA**   Zip: **91710**

Mailing Address: **14020 CENTRAL AVE STE 590**   City: **CHINO**   State: **CA**   Zip: **91710**

Primary Contact Name: **SHUCHUAN SHIH**   Title: **Owner**

Federal Tax ID Number: <span style="color:red">Redacted</span>

Purchase Price: **$75,000.00**   Specified Percentage: **12%**   Purchased Amount: **$112,425.00**   Daily Amount: **$1,499.00**

Account for the Deposit of All Future Receipts:  Bank: *Chase Bank*

Account No: <span style="color:red">Redacted</span>

Effective, **OCTOBER 04, 2018**. Seller, identified above, hereby sells, assigns and transfers to Ace Funding Source LLC, located at 366 NORTH BROADWAY, JERICHO, NY 11753 ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") until Seller has received the Purchased Amount.

**"Future Receipts"** includes all payments made by cash, check, or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business.

As payment for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above.

Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer.

Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee.

Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the Account and the ability to withdraw the Initial Daily Amount.

If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

**Agreement of Seller:** By signing below Seller agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

ACE FUNDING SOURCE

**Subject:** RE: Vaio - Update on Cash Collateral Stipulation?
**From:** Donald Reid <don@rmbklaw.com>
**Date:** 12/4/2018, 8:01 AM
**To:** Elmer Dean Martin III <elmer@bankruptcytax.net>, Curtis Jung <curtis@jyllp.com>
**CC:** "Christopher J. Langley \(chris@langleylegal.com\)" <chris@langleylegal.com>, Charity
Manee <charity@rmbklaw.com>, "schang@spclawoffice.com" <schang@spclawoffice.com>

Hi Elmer,

I think I was initially confused.  Grand Wisdom is one of Vario's suppliers.  It is a trading company in Taiwan.
Grand Wisdom distributes purchase orders to different manufacturers, and once the products are ready, they
ship the products to Vario or Vario's customers upon request.  Grand Wisdom's owner is 王俊富.

Sorry for the confusion.

Donald Reid
Reid & Manee LLP
3615 Main Street, Suite 103
Riverside, CA 92501
(951) 777-2460
www.rmbklaw.com
This email and any files or attachments transmitted with it may contain privileged or otherwise confidential
information. If you are not the intended recipient, or believe that you may have received this communication in
error, please advise the sender via reply email and immediately delete the email you received.


**From:** Elmer Martin <elmermartin@gmail.com> **On Behalf Of** Elmer Dean Martin III
**Sent:** Monday, December 3, 2018 5:00 PM
**To:** Donald Reid <don@rmbklaw.com>; Curtis Jung <curtis@jyllp.com>
**Cc:** Christopher J. Langley (chris@langleylegal.com) <chris@langleylegal.com>; Charity Manee
<charity@rmbklaw.com>; schang@spclawoffice.com
**Subject:** Re: Vaio - Update on Cash Collateral Stipulation?


thanks

who is Grand Wisdom?  Who owns it? There is no lighting manufacturer by that name that
we can identify.

```
Elmer Dean Martin III
A Professional Corporation
P O Box 4670
Diamond Bar, California 91765
elmer@bankruptcytax.net
909 861 6700 Office
```
On 12/3/2018 4:34 PM, Donald Reid wrote:
Hi Elmer,

I received these files from the client this afternoon.  It sounds like there was a master PO that quoted item prices

RE: Vaio - Update on Cash Collateral Stipulation? Case 6:18-bk-19730-MJ Doc 15 Filed 12/28/18 Entered 12/28/18 16:05:46 Desc
Imap://imap.gmail.com:993/fetch>UID>/East West/Vario>156?...
Main Document    Page 27 of 68

for each type of good. The quantity and timing for each particular shipment was later negotiated by Eva and Carl with Grand Wisdom. Because Grand Wisdom must acquire the source material before production, Vario would pay 50% of the purchase price when the quantity and timing of the shipment was confirmed. Then Vario would pay the remaining 50% prior to shipment. The excel spreadsheet accounts for the current $1.9MM in inventory deposits. Vario has obtained a statement from Grand Wisdom, which states that Vario has prepaid $1.9MM for future purchases (translated from Chinese):

> "According to the verbal commitment between our company and Vario Corp, that it covers product purchase, mold manufacturing, product safety, lab testing certifications, and factory audit on behalf of Vario Corp. Our company certifies that Vario Corp prepaid a total of USD $1,957,533.50.

> Note: Even though the materials are ready for the manufacturing process, as verified by the prepayment of $1,056,300.00 by Vario Corp, production has been delayed by 1.5 months. If the merchandise is not produced within a reasonable time frame, our company does not accept liability for any damages or losses, which come as a result of unscheduled and/or unapproved delays."

Finally, Vario's general ledger and chart of accounts can be downloaded from here. The GL is too large to email. Account Redacted (starting at line 228,217) shows all payments to Grand Wisdom.

Please let me know what else you need from Vario to authorize use of cash collateral.

Thanks,

Donald Reid
Reid & Manee LLP
3615 Main Street, Suite 103
Riverside, CA 92501
(951) 777-2460
www.rmbklaw.com

This email and any files or attachments transmitted with it may contain privileged or otherwise confidential information. If you are not the intended recipient, or believe that you may have received this communication in error, please advise the sender via reply email and immediately delete the email you received.

**From:** Elmer Martin <elmermartin@gmail.com> **On Behalf Of** Elmer Dean Martin III
**Sent:** Monday, December 3, 2018 12:15 PM
**To:** Donald Reid <don@rmbklaw.com>; Curtis Jung <curtis@jyllp.com>
**Cc:** Christopher J. Langley (chris@langleylegal.com) <chris@langleylegal.com>; Charity Manee <charity@rmbklaw.com>; schang@spclawoffice.com
**Subject:** Re: Vaio - Update on Cash Collateral Stipulation?


after this afternoon if there is not full disclosure regarding the payments to "Grand Wisdom" we will proceed with a 2004 exam

```
Elmer Dean Martin III
A Professional Corporation
P O Box 4670
Diamond Bar, California 91765
elmer@bankruptcytax.net
909 861 6700 Office
```
On 12/3/2018 11:29 AM, Donald Reid wrote:

The documents should be produced this afternoon. I am waiting on the client.

**From:** Elmer Martin <elmermartin@gmail.com> **On Behalf Of** Elmer Dean Martin III
**Sent:** Monday, December 3, 2018 11:08 AM
**To:** Donald Reid <don@rmbklaw.com>; Curtis Jung <curtis@jyllp.com>
**Cc:** Christopher J. Langley (chris@langleylegal.com) <chris@langleylegal.com>; Charity Manee
<charity@rmbklaw.com>; schang@spclawoffice.com
**Subject:** Re: Vaio - Update on Cash Collateral Stipulation?

when will the docs regarding the deposit be provided? The schedules aren't even
complete.

| Part 2. | Deposits and Prepayments |
| --- | --- |

6. Does the debtor have any deposits or prepayments?

☐ No. Go to Part 3.
☑ Yes Fill in the information below.

7.     **Deposits, including security deposits and utility deposits**
       Description, including name of holder of deposit

   7.1.   **Deposit for inventory purchases**

8.     **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
       Description, including name of holder of prepayment

9.     **Total of Part 2.**
       Add lines 7 through 8. Copy the total to line 81.

```
Elmer Dean Martin III
A Professional Corporation
P O Box 4670
Diamond Bar, California 91765
elmer@bankruptcytax.net
909 861 6700 Office
```
On 12/3/2018 10:51 AM, Donald Reid wrote:
Hi Elmer and Curtis,

Have you had an opportunity to discuss with EWB the proposed cash collateral stipulation and budget I sent to
you on Thursday afternoon? Attached are those documents again. As you know, the Debtor cannot pay any
operating expenses until a cash collateral stipulation is in place. In order to pay payroll by Friday, Vario's payroll
processor will have to draw the amounts from Vario's DIP account by Wednesday. Please let us know as quickly
as possible whether or not EWB will support Vario's proposed liquidation in chapter 11.

Thanks,

Donald Reid
Reid & Manee LLP
3615 Main Street, Suite 103

Objection Exhibit 4 Page 0028
12/27/2018, 5:45 PM

RE: Vaio - Update on Cash Collateral Stipulation    Case 6:18-bk-19780-MJ    Doc 15    Filed 12/28/18    Entered 12/28/18 16:05:46    Desc    imap://imap.gmail.com993/fetch>UID9/East West/Vario>156?...

Main Document    Page 29 of 68

Riverside, CA 92501

(951) 777-2460

www.rmbklaw.com

This email and any files or attachments transmitted with it may contain privileged or otherwise confidential information. If you are not the intended recipient, or believe that you may have received this communication in error, please advise the sender via reply email and immediately delete the email you received.

Objection Exhibit 4 Page 0029

12/27/2018, 5:45 PM

# 萬喆貿易有限公司

## GRAND WISDOM COMPANY LIMITED

### 確認函

依據蔽公司與 Vario Corp 所達成商品購買協議，模具製作、產品安規檢驗、驗廠等各項攤提之協議；蔽公司茲證明 Vario Corp 預付款總計美金$1,957,533.50。

備註：預付款中$1,056,300.00 商品已準備材料其生產已經比預計時間延後 1 個半月，如仍然無法投入生產所造成任何損失蔽公司概不負責。

2F., No.367-1 Sec. 2 Zhongshan Road, Banqiao Dist., New Taipei City, Taiwan

Description  Security  Fonts   Initial View  Custom  Advanced

Description

**File:**  Grand Wisdom email

**Title:**

**Author:**

**Subject:**

**Keywords:**

Created:  **11/28/2018 4:19:36 PM**                    Additional Metsdata...

Modified:

**Application:**

Advanced

PDF Producer:

PDF Version:  **1.4 (Acrobat 5.x)**

Location:  C:\Users\elmer\Desktop\CLIENT FOLDERS\East West Bank Misc\Vario\debtor docs\Grand Wisdom doc dump 12 3 18\

File Size:  127.85 KB (130,916 Bytes)

Page Size:  8.27 x 11.70 in          Number of Pages:  **1**

Tagged PDF:  **No**                 Fast Web View:  No

Vario Corp

14020 Central Ave., Unit 590
Chino, CA 91710

# Purchase Order

| Exit Factory Date | Date | P.O. No. |
|---|---|---|
| 2/28/2019 | 2/26/2018 | P20007 |

| Vendor | Ship To |
|---|---|
| Grand Wisdom Co. NO. 39 Set. 2 Hankou Street, Wanhua Dist., Taipei Taiwan Redacted | Vario Corp. 14020 Central Ave., Unit 590 Chino, CA 91710 |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| SLA19DIP0701 | Meilo PS60 Dip 10ct LED light bulb string, 10CT ( CONNECT 3 SETS) Wire Cut: 1.5M(lead) * 1 M(spacing) * 0.05M(end)Wire Size: 0.5 mm², Adaptor: UL12W IP44 Meilo Package ITEM#LBSL-PS60-DIP UPC#847750015133 | 60,000 | 25.00 | 1,500,000.00 |
| SLG16DIP0701 | Meilo G45 Dip 10ct LED light bulb string, 10CT ( CONNECT 3 SETS) Wire Cut: 1.5M(lead) * 1 M(spacing) * 0.05M(end) Wire Size: 0.5 mm², Adaptor: UL12W IP44 Meilo Package ITEM#LBSL-G45-DIP UPC#847750015201 | 45,000 | 25.00 | 1,125,000.00 |
| SLG40DIP22-CC | Meilo G40 Dip Color Changing with Remote Controller 10ct LED light bulb sting, 10CT( CONNECT 3 SETS) | 50,000 | 28.75 | 1,437,500.00 |
| MRL16-DL | 16ft LED Ultra Flex Mini Rope Light, Daylight 80 LEDs, 2.36" spacing, Silver wire, DC24V Plug in, Product Certificate or adaptor listed : CTL, Kelvin of LEDs :5000K, UPC#847750016383 | 31,920 | 4.50 | 143,640.00 |
| MRL16-YL | 16ft LED Ultra Flex Mini Rope Light, Yellow 80 LEDs, 2.36" spacing, Silver wire, DC24V Plug in, Product Certificate or adaptor listed : CTL, Kelvin of LEDs :590-592nm, UPC#847750016390 | 31,920 | 4.50 | 143,640.00 |

| PO Cancel Date | | **Total** | |
|---|---|---|---|
| 2/28/2019 | | | |

Prepare by _____

Approve by _____

Objection Exhibit 5 Page 0032

Vario Corp

14020 Central Ave., Unit 590
Chino, CA 91710

# Purchase Order

| Exit Factory Date | Date | P.O. No. |
|---|---|---|
| 2/28/2019 | 2/26/2018 | P20007 |

| Vendor | Ship To |
|---|---|
| Grand Wisdom Co.<br>NO. 39 Set. 2 Hankou Street,<br>Wanhua Dist.,<br>Taipei Taiwan<br>·Redacted | Vario Corp.<br>14020 Central Ave., Unit 590<br>Chino, CA 91710 |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| BS14-6-G40O-CC | 6ct G40 LED Globe String Lights Color Changing<br>G40 Opal PVC Bulb with Color Changing, 17 functions, Controller and One Button Remote<br>24" Spacing, Length: 14FT, Black wire/Non-interchangeable<br>DC12V Plug in, Product Certificate or adaptor listed : CTL ,<br>UPC#847750016420 | 40,000 | 15.00 | 600,000.00 |
| BS18-10-A19D7-WW | 10ct LED Vintage String Lights, Warm White<br>A19 Clear PVC Bulb with 7 LEDs<br>10ct/ 7LEDs,20" Spacing, Length: 18FT, Black wire/Interchangeable<br>AC120V Plug in, Product Certificate or adaptor listed : CTL ,<br>Kelvin of LEDs: 2100K,<br>UPC#847750016406 | 20,000 | 11.50 | 230,000.00 |
| FSL16.4-CR-CC | 16.4ft LED Flex Strip Color Changing with Controller and One Button Remote<br>100 LEDs, 2" spacing, White Strip with grey Meilo Logo and other information<br>AC120V Plug in, Product Certificate or adaptor listed : CTL<br>(17 Functions Please see attaced file WMD10 confirmed spec)<br>UPC#847750016376 | 159,600 | 12.09 | 1,929,564.00 |

| PO Cancel Date | | **Total** | |
|---|---|---|---|
| 2/28/2019 | | | |

Prepare by _____

Approve by _____

Objection Exhibit 5 Page 0033

Vario Corp

14020 Central Ave., Unit 590
Chino, CA 91710

# Purchase Order

| Exit Factory  Date | Date | P.O. No. |
|---|---|---|
| 2/28/2019 | 2/26/2018 | P20007 |

| Vendor | Ship To |
|---|---|
| Grand Wisdom Co.<br>NO. 39 Set. 2 Hankou Street,<br>Wanhua Dist.,<br>Taipei Taiwan<br><span style="color:red">Redacted</span> | Vario Corp.<br>14020 Central Ave., Unit 590<br>Chino, CA 91710 |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| TL16.4-CCRGBW | 16.4ft LED TAPE LIGHT, 180 LED's<br>Lights<br>Lights Color: C+RGBW ,20 Functions<br>Power Source: DC 12V, Light spacing:<br>2.165",Power Cord Length: 4ft,<br>Connect Length: 3 sets, 4 units/MC<br>UPC #847750020809<br>Master Carton UPC #10847750020806 | 60,800 | 9.7436 | 592,410.88 |
| ML12-MRL48-WH (DL) | 48ft LED Injection Rope Light<br>Color: White/Day Light<br>Color box dimension:<br>7.5"L*1.75"D*9.5"H<br>Meilo Package 6units/master Carton<br>UPC#847750004106 | 38,000 | 13.21 | 501,980.00 |
| ML12-MRL48-SW | 48ft LED Injection Rope Light<br>Color: Soft White<br>Color box dimension:<br>10.75"X1.875"X11"<br>Meilo Package 6units/master Carton<br>UPC#847750014198 | 38,000 | 13.21 | 501,980.00 |
|  | 1.Shipping Window: Yantain port; To Be<br>Advised (from 03/01/2018 to 02/28/2019)<br><br>The shipment will be denied as the date<br>specified above. Please notify us<br>immediately if you are unable to ship as<br>specified.<br><br>2. Payment Term: FOB China, 50%<br>Prepaid, 50% COD<br><br>3. Late shipment penalty : 1% per day plus<br>customer PO amount.<br><br>4. All packaging must meet Meilo/Vario<br>instruction requirements and meet |  |  |  |

| PO Cancel Date | | **Total** | |
|---|---|---|---|
| 2/28/2019 | | | |

Prepare by _____

Approve by _____

Objection Exhibit 5 Page 0034

Vario Corp

14020 Central Ave., Unit 590
Chino, CA 91710

# Purchase Order

| Exit Factory  Date | Date | P.O. No. |
|---|---|---|
| 2/28/2019 | 2/26/2018 | P20007 |

| Vendor |
|---|
| Grand Wisdom Co.<br>NO. 39 Set. 2 Hankou Street,<br>Wanhua Dist.,<br>Taipei Taiwan<br>·Redacted |

| Ship To |
|---|
| Vario Corp.<br>14020 Central Ave., Unit 590<br>Chino, CA 91710 |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| | Meilo/Vario PIP<br><br>5. Bulk master carton dimension need to be confirmed by QA team for production.<br><br>6. Please sign back within 3 days after the factory received this PO, otherwise, it will be deemed to acquiesce.<br><br>7. Any delay will result in the factory having to ship by air, and all cost related to this delay will be delegated to the factory.<br><br>8. Required LED Kelvin Temperatures: Daylight: 5000K, Soft white: 2700K, Red: 625nm, Blue: 465nm, Green: 525nm, Yellow: 590-592nm<br><br>9. Product Development, Mold Manufacturing, Product Safety Lab testing, Certifications, and Factory Audit, etc deduct from prepaid fund. | | | |

| PO Cancel Date | | **Total** | | $8,705,714.88 |
|---|---|---|---|---|
| 2/28/2019 | | | | |

Prepare by _____

Approve by _____

Objection Exhibit 5 Page 0035

escription

File: PO #20007

Title:

Author:

Subject:

Keywords:

Created: 12/3/2018 3:08:37 PM

Modified:

Application: Created By SAMSUNG MFP

Additional Metadata...

dvanced

PDF Producer: Samsung-X4300LX

PDF Version: 1.6 (Acrobat 7.x)

Location: C:\Users\elmer\Desktop\CLIENT FOLDERS\East West Bank Misc\Vario\debtor docs\Grand Wisdom doc dump 12 3 18\

File Size: 1.83 MB (1,917,767 Bytes)

Page Size: 8.50 x 11.00 in        Number of Pages: 4

Tagged PDF: No                    Fast Web View: No



**EAST WEST BANK** — *Your Financial Bridge*

## Wire Summary Report Between: 1/1/2017 And 12/31/2017

### Inbound

| Message ID | Wire Date | Amount | Beneficiary Name | Originator | Originator Acct Nbr | OMAD | Branch | Reference Nbr |
|---|---|---|---|---|---|---|---|---|
| Redacted | | | | | | | | |

### Outbound

| Message ID | Wire Date | Amount | Originator | Beneficiary Name | Benn Acct Nbr | IMAD | Branch | Reference Nbr |
|---|---|---|---|---|---|---|---|---|
| Redacted | 3/23/2017 | $443,767.34 | VARIO CORP. | Forever Rise Investment Limited | Redacted | Redacted | Redacted | Redacted |
| | 3/28/2017 | $270,552.16 | VARIO CORP. | Forever Rise Investment Limited | | | | |
| | 4/5/2017 | $112,537.21 | VARIO CORP. | Forever Rise Investment Limited | | | | |
| | 6/27/2017 | $140,667.10 | VARIO CORP. | Forever Rise Investment Limited | | | | |
| | 7/13/2017 | $70,236.98 | VARIO CORP. | Forever Rise Investment Limited | | | | |
| | 7/19/2017 | $346,218.80 | VARIO CORP. | Forever Rise Investment Limited | | | | |
| | 3/24/2017 | $135,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 4/11/2017 | $125,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 4/17/2017 | $156,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 4/25/2017 | $170,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/2/2017 | $120,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/5/2017 | $120,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/11/2017 | $120,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/15/2017 | $120,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/18/2017 | $150,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/23/2017 | $103,100.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 6/2/2017 | $150,500.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 6/20/2017 | $180,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 6/23/2017 | $150,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 7/3/2017 | $100,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 7/5/2017 | $100,618.29 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 7/11/2017 | $80,650.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 7/18/2017 | $52,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 7/26/2017 | $50,809.01 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 7/28/2017 | $69,885.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/2/2017 | $65,060.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/4/2017 | $69,850.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/9/2017 | $85,500.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/11/2017 | $79,389.08 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/23/2017 | $80,250.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/28/2017 | $83,500.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/30/2017 | $32,160.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/6/2017 | $75,971.86 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/8/2017 | $49,929.22 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/12/2017 | $106,800.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/13/2017 | $58,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/19/2017 | $76,800.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/20/2017 | $46,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/21/2017 | $32,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 9/26/2017 | $76,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/2/2017 | $130,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/4/2017 | $64,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/11/2017 | $114,879.06 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/16/2017 | $159,262.76 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/16/2017 | $54,695.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/17/2017 | $85,305.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |

**EAST WEST BANK**
*Your Financial Bridge*

## Wire Summary Report Between: 1/1/2017 And 12/31/2017

| Date | Amount | Recipient |
| --- | --- | --- |
| 10/19/2017 | $48,400.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/1/2017 | $46,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/2/2017 | $92,080.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/7/2017 | $88,695.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/9/2017 | $72,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/14/2017 | $23,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/27/2017 | $43,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/29/2017 | $30,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/5/2017 | $110,039.50 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/6/2017 | $112,900.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/11/2017 | $50,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/12/2017 | $43,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/13/2017 | $38,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/19/2017 | $39,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/21/2017 | $45,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 12/27/2017 | $35,500.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/5/2017 | $40,241.44 VARIO CORP. | HK Hongshun Lighting Co., Limited |
| 6/9/2017 | $33,645.15 VARIO CORP. | HK Hongshun Lighting Co., Limited |
| 3/23/2017 | $36,304.92 VARIO CORP. | Hongshun Lighting Co., Limited |
| 3/31/2017 | $40,241.44 VARIO CORP. | Hongshun Lighting Co., Limited |
| 4/5/2017 | $23,000.00 VARIO CORP. | Hsu Yu Mou |
| 3/24/2017 | $110,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 3/30/2017 | $72,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 6/13/2017 | $128,788.80 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 6/23/2017 | $97,833.80 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 8/14/2017 | $107,214.80 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 10/23/2017 | $139,797.24 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 11/8/2017 | $56,093.22 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 11/15/2017 | $103,508.76 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 11/28/2017 | $45,962.34 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP |
| 11/1/2017 | $332,491.49 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 11/2/2017 | $10,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 12/8/2017 | $77,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 12/14/2017 | $51,136.72 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 12/26/2017 | $54,866.88 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 5/24/2017 | $350,000.00 VARIO CORP. | Pioneer Depot Limited |
| 8/15/2017 | $17,000.00 VARIO CORP. | Popular Printers Inc |
| 9/15/2017 | $8,500.00 VARIO CORP. | Popular Printers Inc |
| 6/1/2017 | $100,000.00 VARIO CORP. | Shih Mu Sheng |
| 6/1/2017 | $8,150.64 VARIO CORP. | Shu Chuan Shih |
| 7/12/2017 | $50,000.00 VARIO CORP. | SHUCHUAN SHIH |
| 4/11/2017 | $149,499.52 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 4/14/2017 | $156,353.84 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 4/21/2017 | $201,262.80 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 4/28/2017 | $157,849.20 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 5/9/2017 | $113,286.42 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 5/16/2017 | $91,455.76 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 5/23/2017 | $100,191.72 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 5/30/2017 | $133,934.00 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 6/13/2017 | $133,700.52 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 6/16/2017 | $120,357.24 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 6/23/2017 | $20,000.00 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 6/28/2017 | $56,051.66 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 7/7/2017 | $74,620.08 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 7/17/2017 | $79,988.10 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 7/20/2017 | $50,620.00 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 7/26/2017 | $50,276.32 VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |

Redacted Redacted Redacted
Redacted
Redacted
Redacted

**EAST WEST BANK**
*Your Financial Bridge*

Redacted

**Wire Summary Report Between: 1/1/2017 And 12/31/2017**

| Date | Amount | Recipient |
|------|--------|-----------|
| 8/1/2017 | $50,368.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 8/17/2017 | $61,629.21 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 8/24/2017 | $70,298.47 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 8/31/2017 | $105,187.92 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 9/5/2017 | $10,640.73 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 9/14/2017 | $117,986.54 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 9/15/2017 | $42,079.21 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 9/21/2017 | $71,296.28 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 9/27/2017 | $100,688.03 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 9/28/2017 | $11,660.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 10/5/2017 | $93,252.47 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 10/6/2017 | $125,840.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 10/12/2017 | $204,658.35 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 10/18/2017 | $58,322.40 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 10/25/2017 | $103,762.85 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 11/2/2017 | $138,491.49 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 11/7/2017 | $47,943.70 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 11/13/2017 | $24,500.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 11/21/2017 | $16,385.33 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 11/30/2017 | $40,219.20 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |

Redacted

**EAST WEST BANK** Your Financial Bridge

## Wire Summary Report Between: 1/3/2018 And 12/3/2018

**Inbound**

| Message ID | Wire Date | Amount | Beneficiary Name | Originator | Originator Acct Nbr | OMAD | IMAD | Branch | Reference Nbr |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | | | | | Redacted | | Redacted | Redacted | Redacted |

**Outbound**

| Message ID | Wire Date | Amount | Originator | Beneficiary Name | Bene Acct Nbr | IMAD | Branch | Reference Nbr |
|---|---|---|---|---|---|---|---|---|
| Redacted | 5/4/2018 | $786.30 | VARIO CORP. | BAILILAI INTERNATIONAL GROUP LTD | Redacted | Redacted | Redacted | Redacted |
| | 5/2/2018 | $1,420.00 | VARIO CORP. | AHI International Limited | | | | |
| | 8/31/2018 | $2,000.00 | VARIO CORP. | Guangzhou Luoshi Co., Ltd | | | | |
| | 5/2/2018 | $3,300.00 | VARIO CORP. | Lee Hsin Yi | | | | |
| | 10/3/2018 | $5,000.00 | VARIO CORP. | Lexint Law Inc | | | | |
| | 4/13/2018 | $5,050.00 | VARIO CORP. | RICH TRIPOD INVESTMENT INC | | | | |
| | 5/4/2018 | $6,000.00 | VARIO CORP. | PricewaterhouseCoopers Ltd | | | | |
| | 9/24/2018 | $7,500.00 | VARIO CORP. | Guangzhou Luoshi Co., Ltd | | | | |
| | 3/8/2018 | $8,550.00 | VARIO CORP. | Grand Universal Limited | | | | |
| | 5/8/2018 | $10,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/7/2018 | $10,336.00 | VARIO CORP. | MAXTEAM LIMITED | | | | |
| | 1/25/2018 | $10,374.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED | | | | |
| | 4/3/2018 | $12,000.00 | VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. | | | | |
| | 9/27/2018 | $12,500.00 | VARIO CORP. | Guangzhou Luoshi Co., Ltd | | | | |
| | 4/26/2018 | $15,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/26/2018 | $15,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/21/2018 | $16,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 10/3/2018 | $18,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 1/22/2018 | $20,000.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED | | | | |
| | 7/23/2018 | $21,473.98 | VARIO CORP. | HK Hongshun Lighting Co., Limited | | | | |
| | 3/27/2018 | $24,000.00 | VARIO CORP. | Pioneer Depot Limited | | | | |
| | 10/23/2018 | $25,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 8/7/2018 | $26,275.45 | VARIO CORP. | HK Hongshun Lighting Co., Limited | | | | |
| | 10/16/2018 | $27,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 2/13/2018 | $30,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 3/19/2018 | $30,000.00 | VARIO CORP. | Pioneer Depot Limited | | | | |
| | 3/20/2018 | $30,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/16/2018 | $30,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 1/4/2018 | $33,000.00 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED | | | | |
| | 1/11/2018 | $33,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 1/16/2018 | $33,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 1/3/2018 | $33,587.70 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED | | | | |
| | 5/25/2018 | $35,000.00 | VARIO CORP. | Pioneer Depot Limited | | | | |
| | 3/29/2018 | $37,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 5/24/2018 | $38,000.00 | VARIO CORP. | Pioneer Depot Limited | | | | |
| | 1/9/2018 | $40,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 1/22/2018 | $40,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 2/22/2018 | $40,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 3/19/2018 | $40,000.00 | VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. | | | | |
| | 4/2/2018 | $40,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 6/4/2018 | $40,000.00 | VARIO CORP. | HK Hongshun Lighting Co., Limited | | | | |
| | 6/8/2018 | $40,000.00 | VARIO CORP. | HK Hongshun Lighting Co., Limited | | | | |
| | 5/9/2018 | $40,939.60 | VARIO CORP. | Grand Universal Limited | | | | |
| | 7/20/2018 | $45,219.96 | VARIO CORP. | Hongtong LangMan Lighting Industry | | | | |
| | 2/23/2018 | $47,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |
| | 3/8/2018 | $48,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd | | | | |

Redacted Redacted Redacted

Redacted

Redacted

Redacted

Redacted

# EAST WEST BANK
*Your Financial Bridge*

## Wire Summary Report Between: 1/3/2018 And 12/3/2018

| Date | Amount | Beneficiary |
|---|---|---|
| 3/21/2018 | $50,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 10/18/2018 | $50,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 5/30/2018 | $50,935.78 VARIO CORP. | Grand Universal Limited |
| 5/23/2018 | $51,306.80 VARIO CORP. | Grand Universal Limited |
| 3/6/2018 | $52,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/18/2018 | $54,500.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 5/25/2018 | $54,660.11 VARIO CORP. | Hongkong LangMan Lighting Industry |
| 1/18/2018 | $55,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 3/13/2018 | $55,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 2/6/2018 | $56,750.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 2/20/2018 | $57,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 2/21/2018 | $60,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 10/1/2018 | $60,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 1/26/2018 | $60,850.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 1/31/2018 | $63,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/6/2018 | $67,000.00 VARIO CORP. | Guangzhou Luoshi Co., Ltd |
| 7/3/2018 | $68,500.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/13/2018 | $70,500.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 3/15/2018 | $75,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 5/29/2018 | $75,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 8/7/2018 | $75,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/3/2018 | $76,627.89 VARIO CORP. | Hongkong LangMan Lighting Industry |
| 6/19/2018 | $76,972.80 VARIO CORP. | Grand Universal Limited |
| 5/11/2018 | $77,472.60 VARIO CORP. | Grand Universal Limited |
| 3/2/2018 | $80,000.00 VARIO CORP. | Pioneer Depot Limited |
| 5/31/2018 | $80,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/17/2018 | $80,000.00 VARIO CORP. | Pioneer Depot Limited |
| 9/25/2018 | $80,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/27/2018 | $82,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 2/26/2018 | $88,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 2/27/2018 | $90,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/5/2018 | $90,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 10/15/2018 | $90,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/13/2018 | $100,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 4/13/2018 | $100,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/17/2018 | $100,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/23/2018 | $100,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 7/2/2018 | $100,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/4/2018 | $100,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 10/11/2018 | $100,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 1/24/2018 | $102,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/7/2018 | $110,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/17/2018 | $110,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/19/2018 | $110,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/5/2018 | $110,500.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/18/2018 | $110,979.52 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 7/9/2018 | $122,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 5/1/2018 | $125,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/12/2018 | $127,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/19/2018 | $130,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 8/28/2018 | $130,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 8/30/2018 | $130,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/11/2018 | $333,500.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/7/2018 | $135,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/10/2018 | $245,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |
| 5/2/2018 | $150,000.00 VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 7/24/2018 | $150,000.00 VARIO CORP. | Grand Wisdom Co., Ltd |

Redacted

**EAST WEST BANK**
*Your Financial Bridge*

Redacted

## Wire Summary Report Between: 1/3/2018 And 12/3/2018

| Date | Amount | | Recipient |
|------|--------|--|-----------|
| 9/5/2018 | $150,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 11/7/2018 | $152,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/13/2018 | $160,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/14/2018 | $160,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/29/2018 | $162,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 1/29/2018 | $172,500.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 8/31/2018 | $180,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 2/1/2018 | $193,881.36 | VARIO CORP. | TAI LONG HOLDINGS CO., LIMITED |
| 4/9/2018 | $200,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/12/2018 | $200,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/31/2018 | $200,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 8/1/2018 | $200,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/10/2018 | $220,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 7/20/2018 | $230,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 9/13/2018 | $230,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/6/2018 | $246,769.62 | VARIO CORP. | JIANGXI TAI LONG OPTRONICS CORP. |
| 4/6/2018 | $350,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 4/11/2018 | $350,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |
| 6/26/2018 | $355,000.00 | VARIO CORP. | Grand Wisdom Co., Ltd |

1  Robert C. Hsu, SBN 225437
   Bryon Y. Chung, SBN250299
2  **LEXINT LAW GROUP, APLC**
   13300 Crossroads Parkway North, Suite 100
3  City of Industry, California 91746
   Telephone: (626) 286-7055
4  Facsimile: (562) 999-3321

5
   Attorneys for Plaintiff,
6  VARIO CORP. dba Meilo Creation

7

8

9              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                 **FOR THE COUNTY OF SAN BERNARDINO**

11

12  VARIO CORP., a California corporation dba        CASE NO.    CIVDS1823376
    Meilo Creation;
13                                                   Assigned for all purposes to:
                          Plaintiff(s),              Hon.
14                                                   Dept.:
           v.
15                                                   **COMPLAINT FOR:**

16  ADAM McFARLANE, an individual;
    GATEWAY CORP., a corporation registered     1.  **BREACH OF EMPLOYMENT**
17  under the laws of the Peoples Republic of        **CONTRACT;**
    China; GATEWAY PLASTIC &                    2.  **BREACH OF DUTY OF LOYALTY;**
18  HARDWARE LIGHTING CO., LTD.                  3.  **BREACH OF FIDUCIARY DUTIES;**
    (CHINA), a corporation registered under the  4.  **AIDING AND ABETTING BREACH**
19  laws of the Peoples Republic of China;           **OF FIDUCIARY DUTIES;**
    FRANK LU, an individual; HAIR               5.  **CONSTRUCTIVE FRAUD;**
20  ILLUSION, LLC, a Massachusetts limited       6.  **INTENTIONAL INTERFERENCE**
    liability company; and, DOES 1 through 20,       **WITH PROSPECTIVE ECONOMIC**
21  inclusive,                                        **ADVANTAGE;**
22                                               7.  **NEGLIGENT INTERFERECNE**
                          Defendants.                **WITH PROSPECTIVE ECONOMIC**
23                                                   **ADVANTAGE;**
24                                               8.  **MISAPPROPRIATION OF TRADE**
                                                     **SECRETS [Cal. Civ. Code § 3426,** *et*
25                                                   *seq.***];**
                                                 9.  **MISUSE OF TRADE SECRETS [Cal.**
26                                                   **Civ. Code § 3426,** *et seq.***];**
                                                 10. **UNJUST ENRICHMENT;**
27                                               11. **UNFAIR COMPETITION**
28

1
COMPLAINT

Objection Exhibit 7 Page 0043

b. <u>Employee Benefits</u>. Employee shall be eligible to participate in all employee benefit plans, policies, programs, or perquisites in which other Company executive or officers participate. The terms and conditions of Employee's participation in the Company's employee benefit plans, policies, programs, or perquisites shall be governed by the terms of each such plan, policy, or program.

c. <u>Incentive Bonus</u>. In addition to the Base Salary, the Employee shall be entitled to the following performance incentives during the time he is employed by the Company, provided that the relevant revenues target stipulated under section 4(b)(6) has been achieved:

(1) 0.05% of the annual net revenues; and

(2) 0.15% of the increase in annual net revenues from the previous year.

For the sake of clarity, two examples are given below for the calculation of incentive bonus for year 2016:

*Example 1*: If the Company achieves net revenues of $12,000,000 in 2015 and only $14,500,000 in 2016, then the Employee shall not be entitled to any incentive bonus, since his revenues target has not been achieved for year 2016.

*Example 2*: If the Company achieves net revenues of $12,000,000 in 2015 and $15,000,000 in 2016, then the Employee shall receive a total annual bonus of $12,000 in 2016 ($7,500 from 0.05% of annual net revenues and $4,500 from 0.15% of the $3,000,000 increase in annual net revenues).

d. <u>Additional Incentive in the Event of Going Public</u>. As further incentive to Employee, in the event the Company shall become publicly traded in Mainland China through JiangXi TaiLong Optronics Corp. ("JiangXi"), the Employee shall be entitled to receive 5% of JiangXi's issued and outstanding shares ("Shares") prior to the initial public offering, provided that:

1) The Employee is still employed by the Company at the time JiangXi goes public;

2) The Company's net revenues are at least $25,000,000 by the end of 2018;

3) JiangXi becomes publicly traded in Mainland China; and

Objection Exhibit 7 Page 0044

4) If Employee intends to sell or transfer the Shares, he shall first offer the Shares to JiangXi for a period of thirty (30) days, and then, to the extent such offer is rejected or not accepted by JiangXi within that period, such Shares shall be offered for sale for a period of ten (10) days to Carl Chen. Each such offer shall be in writing and shall specify the name and address of each person to whom such Shares are proposed to be transferred, the price per share and other terms upon which each such transfer is intended to be made; and each such offer may be accepted by the offeree in whole or in part at any time during the continuance of the offer. If the Shares are not purchased pursuant to the aforesaid offers, the Employee shall for a period of ninety (90) days thereafter be free to transfer such Shares to the person or persons so named at the price per share and upon the other terms so named.

4. <u>Duties and Performance</u>. The Employee acknowledges and agrees that he is being offered a position of employment by the Company with the understanding that the Employee possesses a unique set of skills, abilities, and experiences which will benefit the Company, and he agrees that his continued employment with the Company, whether during the term of this Agreement or thereafter, is contingent upon his successful performance of his duties in his position as noted above, or in such other position to which he may be assigned,

   a. <u>General Duties</u>.

     1. Employee shall render to the very best of Employee's ability, on behalf of the Company, services to and on behalf of the Company, and shall undertake diligently all duties assigned to him by the Company.

     2. Employee shall devote his full time, energy and skill to the performance of the services in which the Company is engaged, at such time and place as the Company may direct. Employee shall not undertake, either as an owner, director, shareholder, employee or otherwise, the performance of services for compensation (actual or expected) for any other entity without the express written consent of the President or the Board of Directors. This provision, among others, shall be construed as a material term of the Agreement.

     3. Employee shall faithfully and industriously assume and perform with skill, care, diligence and attention all responsibilities and duties connected with his employment on behalf of the Company.

     4. Employee shall have no authority to enter into any contracts binding upon the Company, or to deliberately create any obligations on the part of the Company, except as may be specifically authorized by the President or Board of Directors of Vario.

3 | Page

VARIO CORP.

FINANCIAL STATEMENTS AND INDEPENDENT AUDITOR'S REPORT

DECEMBER 31, 2017

# TABLE OF CONTENTS

Independent Auditor's Report                                 Page 1 - 2

Balance Sheet                                               Page 3

Income Statement                                            Page 4

Statement of Changes in Stockholder's Equity                Page 5

Statement of Cash Flows                                     Page 6

Notes to Financial Statements                               Page 7 – 14

Supplemental Information – Operating Expenses Schedule       Page 15

**WLCC Accountancy Corp**

1108 S. Baldwin Ave. Suite 201, Arcadia, CA 91007   http://wlcccpa.com/

## Independent Auditor's Report

Board of Directors
VARIO CORP.
Walnut, California

### Report on the Financial Statements

We have audited the accompanying financial statements of Vario Corp. (the Company), which comprise the balance sheet as of December 31, 2017, the related statements of income, changes in stockholder's equity and cash flows for the year then ended, and the related notes to the financial statements.

### Management's Responsibility for the Financial Statements

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

### Auditors' Responsibility

Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Vario Corp. as of December 31, 2017, and the result of its operations and its cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

**Other Information**

Our audit was conducted for the purpose of forming opinions on the financial statements that collectively comprise the Vario Corp.'s basic financial statements. The Operating Expenses Schedule is presented for purposes of additional analysis and is not a required part of the basic financial statements.

May 31ˢᵗ, 2018
Arcadia, California

## VARIO CORP.
## BALANCE SHEET
## AS OF DECEMBER 31, 2017

### ASSETS

| | | |
|---|---|---:|
| Current Assets: | | |
| Cash and cash equivalents | $ | 371,777 |
| Accounts receivable | | 2,654,328 |
| Inventories | | 2,153,749 |
| Deposit for inventory purchases | | 136,897 |
| Prepaid expense | | 18,102 |
| Total Currrent Assets | | 5,334,853 |
| | | |
| Property and equipment, net | | 834,016 |
| | | |
| Capitalized patent and product, net | | 1,278,588 |
| | | |
| Total Assets | $ | 7,447,457 |

### LIABILITIES AND STOCKHOLDERS' EQUITY

| | | |
|---|---|---:|
| Current Liabilities: | | |
| Accounts payable, trade | $ | 348,101 |
| Bank line of credit | | 2,488,820 |
| Accrued expenses and other current liabilities | | 9,719 |
| Accrued interest payable | | 89,075 |
| Income tax payable | | 116,428 |
| Total Current Liabilities | | 3,052,143 |
| | | |
| 4.25% Note payable, related parties | | - |
| 4.25% Subordinated note payable, stockholder | | 2,017,756 |
| | | |
| Stockholders Equity: | | |
| Common stock, no par value, 1,000,000 shares | | |
| authorized and issued | | 2,043,988 |
| Retained earnings | | 333,570 |
| Total stockholders equity | | 2,377,558 |
| | | |
| Total Liabilities and Stockholders' equity | $ | 7,447,457 |

**VARIO CORP.**
**INCOME STATEMENT**
**FOR THE YEAR ENDED DECEMBER 31, 2017**

| | | | |
|---|---|---:|---:|
| Net sales | $ | 13,386,528 | |
| Cost of sales | | 10,654,362 | 79.6% |
| Gross profit | | 2,732,166 | 20.4% |
| Operating expenses | | 2,393,990 | 17.9% |
| Income from operations | | 338,176 | 2.5% |
| Other income (expense): | | | |
| Interest expense | | (190,364) | -1.4% |
| Interest income | | 553 | 0.0% |
| Total other expense, net | | (189,811) | -1.4% |
| Income before income tax provision | | 148,365 | 1.1% |
| Income tax provision | | 85,500 | 0.6% |
| Net income | $ | 62,865 | 0.5% |

See Accompany Notes to Financial Statements

4

**VARIO CORP.**
**STATEMENT OF CHANGES IN STOCKHOLDER'S EQUITY**

| | Common Stock | | Retained Earnings | Total Equity |
|---|---|---|---|---|
| | Shares Issued | Amount | | |
| Balance at December 31, 2016 | 1,000,000 | 2,043,989 | 270,704 | 2,314,693 |
| Net income | - | - | 62,865 | 62,865 |
| Balance at December 31, 2017 | 1,000,000 | 2,043,989 | 333,569 | 2,377,558 |

See Accompany Notes to Financial Statements

5

**VARIO CORP.**
**STATEMENT OF CASH FLOWS**
**FOR THE YEAR ENDED DECEMBER 31, 2017**

| | | |
|---|---|---|
| Cash flows from operating activities: | | |
| Net income | $ | 62,865 |
| Adjustments to reconcile net income | | |
| cash provided by operating activities: | | |
| Depreciation | | 320,048 |
| Amortization | | 80,430 |
| Changes in assets and liabilities | | |
| Accounts receivable | | 88,573 |
| Inventory | | (106,742) |
| Deposit for inventory purchases | | (136,897) |
| Prepaid expenses | | 36,604 |
| Accounts payable, trade | | 67,529 |
| Accrued expenses and other liabilities | | (441,277) |
| Accrued interest payable | | (138,093) |
| Income tax payable | | 37,200 |
| Net cash provided by operating activities | | (129,760) |
| | | |
| Cash flows from investment activities: | | |
| Purchases of property and equipment | | (16,431) |
| Payment made for patents | | (253,099) |
| Net cash used by investment activities | | (269,530) |
| | | |
| Cash flows form financing activities | | |
| Proceeds from bank line of credit | | 1,238,830 |
| Repayment of loan to related parties | | (385,775) |
| Proceeds from loan from stockholder | | (228,422) |
| Net cash provided by financing activities | | 624,633 |
| | | |
| Net increase in cash and cash equivalent | | 225,343 |
| | | |
| Beginning balance | | 146,434 |
| | | |
| Ending balance | $ | 371,777 |

# VARIO CORP.
## NOTES TO FINANCIAL STATEMENTS
### DECEMBER 31, 2017

## Note 1 - BUSINESS AND BASIS OF PRESENTATION

### Description of Business

Vario Corp. (hereinafter referred to as the "Company") was incorporated and organized in the State of California on September 10, 2012. The Company is majorly engaged in the LED Lightening industry as a wholesaler of consumed commercial and household décor products to various retailers throughout North America market.

### Basis of Accounting

The accounting and reporting policies of the Company are in accordance with accounting principles generally accepted in the United States of America, which is based on the accrual method of accounting.

## Note 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

### Use of Estimates and Assumptions

The management uses estimates and assumptions in preparing financial statements in accordance with generally accepted accounting principles ("GAAP"). Those estimates and assumptions affect the reported amounts and disclosure of contingent of assets and liabilities at the date of the financial statements and the reported amount of revenues and expenses during the reporting period. Estimates are used for, but not limited to, the assumptions and estimates used by management in conjunction with the following: (1) measurement of valuation allowances relating to trade receivables and deferred tax assets; and (2) the selection of the useful life of property and equipment, fair values, revenue recognition, taxes, budgeted costs and other similar charges. These estimates are periodically reviewed and, accordingly, adjustments made to these estimates are taken into income in the year in which it is determined. Management believes that the estimates utilized in preparing its financial statements are reasonable and prudent. Actual results could vary from these estimates.

### Revenue Recognition

The Company recognizes revenue in accordance with ASC 605, "Revenue Recognition", when persuasive evidence of an arrangement exists, the price is fixed or determinable, collection is reasonably assured and delivery of products has occurred or services have been rendered. Accordingly, the Company recognizes revenue when products are shipped. Accordingly, revenues are recognized when finished products are delivered to customers and both title and the risks and benefits of ownership are transferred, price is fixed and determinable, collection is reasonably assured and, the amount of future returns can be reasonably estimated. Net sales are derived by deducting sales claims, returns and allowances from sales.

7

**VARIO CORP.**
**NOTES TO FINANCIAL STATEMENTS**
**DECEMBER 31, 2017**

*Cost of Sales*

Cost of sales consist of direct costs incurred to generate the Company's revenue. All other costs are recognized as expense when obligations are incurred.

*Advertising and Promotion Expense*

Advertising and promotion costs are expensed as incurred. Advertising and promotion expense totaled $4,250 for the year ended December 31, 2017.

*Cash and Cash Equivalents*

For the purposes of reporting cash flows, the Company considers all highly-liquid investments with original or remaining maturities to the Company of three months (ninety days) or less to be cash equivalents. Cash and cash equivalents are maintained with secured financial institutions. If, due to current economic conditions, one or more of the financial institutions with which the Company maintains deposit fails, the Company's cash and cash equivalents may be at risk. Deposits with these financial institutions may exceed the amount of insurance provided on such deposits; however, these deposits typically may be redeemed upon demand and therefore, bear minimal risk.

*Accounts Receivable*

Accounts receivable are stated at the amount management expects to collect from outstanding balances. Management provides for probable uncollectible amounts through a charge to earnings and a credit to a valuation allowance based on its assessment of the current status of individual customer accounts. Balances of those that are still outstanding after management has used reasonable collection efforts are written off through a charge to the valuation allowance and a credit to trade accounts receivable. Changes in the valuation allowance have not been material to the financial statements.

*Property and Equipment*

Property and equipment are stated at cost. Depreciation and amortization are computed using the straight-line method over the estimated useful lives as follows:

| | |
|---|---|
| Computer equipment | 5 years |
| Warehouse forklift | 5 years |
| Molding | 5 years |
| Office furniture | 5-7 years |
| Office equipment | 7 years |
| Tooling equipment | 7 years |
| Warehouse equipment | 7 years |

8

# VARIO CORP.
## NOTES TO FINANCIAL STATEMENTS
### DECEMBER 31, 2017

Expenditures for major replacements and betterments to property and equipment are capitalized, while maintenance, repairs and minor renewals are charged directly to expense as incurred.

When assets are disposed of, the related cost and accumulated depreciation thereon are removed from the accounts and any resulting gain or loss is included in operations

### *Inventories*

Inventories are stated at lower of cost or market. "Cost" is determined using the first-in, first-out method, and "Market" represents the lower of replacement cost of estimated net realizable value. The Company periodically reviews for an allowance for potentially excess and obsolete inventories and inventories that are carried at costs that are higher than their estimated net realizable values. As of December 31, 2017, the Company did not have any inventory reserves.

### *Income Taxes*

The Company accounts for income taxes under ASC topic 740, "Income Taxes". ASC topic 740 defines an asset and liability approach that requires the recognition of deferred tax assets and liabilities for the expected future tax consequences of events that have been recognized in the Company's financial statements or tax returns. ASC topic 740 further requires that a tax position must be more likely than not to be sustained before being recognized in the financial statements, as well as the accrual of interest and penalties as applicable on unrecognized tax positions.

Deferred income taxes are recognized for the tax consequences in future years of differences between the tax basis of assets and liabilities and their financial reporting amount at each period end, based on enacted tax laws and statutory tax rates applicable to the periods in which the differences are expected to affect taxable income. Valuation allowances are established, when necessary, to reduced deferred tax assets to the amount expected to be realized. The provision for income taxes represents the tax payable for the period, if any, and the change during the period in deferred tax assets and liabilities. At December 31, 2017, the deferred income taxes are immaterial.

Valuation allowance are recorded when it is more likely than not that some portion or all of the deferred income tax assets will not be realized. Income tax expense is the tax payable or refundable for the period plus or minus the change during the period in deferred income taxes.

Based on its analysis of its position, the Company has concluded that it does not have any uncertain tax positions that meet the recognition or measurement criteria of ASC 740-10. In addition, the Company files U.S. federal and local tax income tax returns. No income tax returns are currently under examination by the government agencies. The statue of limitations of the Company's U.S. federal income tax returns remains open for each of the four years ended December 31, 2017. The statute of limitations of the Company's local state income tax returns may remain open for additional year depending upon the jurisdiction.

Objection Exhibit 8 Page 0056

## VARIO CORP.
## NOTES TO FINANCIAL STATEMENTS
### DECEMBER 31, 2017

*Concentration of Credit Risk*

Financial instruments that potentially subject the Company to concentrations of credit risk are cash and cash equivalents, accounts receivables, accounts payables and accruals, loan from related party and shareholder accounts arising from its normal business activities.

The Company maintains cash and cash equivalents with major local financial institutions. All funds in a noninterest-bearing transaction account are insured in full by the Federal Deposit Insurance Corporation ("FDIC"). This temporary unlimited coverage is in addition to, and separate from, the coverage of at least $250,000 available to depositors under the FDIC's general deposit insurance rules. As of December 31, 2017, cash in financial institutes exceeded FDIC insured balance by $130,810.

The Company has a diversified customer-base. The Company controls credit risk related to accounts receivables through merchant credit card approvals, credit limits and monitoring procedures. The Company routinely assesses the financial strength of its customers, and based upon factors surrounding the credit risk, establishes an allowance, if required, for uncollectible accounts, and believes that its accounts receivables related credit risk exposure beyond such allowance is limited. Based on the historical experience, Management considers low risk of non-performance of this instruments

*Liquidity Risk*

Liquidity risk is dependent on receipt of funds from sales and continued access to sufficient credit facilities to be able to pay the Company's liabilities as they become due.

*Net Income (Loss) and Comprehensive Income (Loss)*

The Company's net income (loss) and comprehensive income (loss) are identical.

*Fair Value Measurements*

The Financial Accounting Standards Board ("FASB") ASC 820, "Fair Value Measurements and Disclosures", provides the framework for measuring fair value. The framework prioritizes and ranks the level of market price observability used in measuring investments at fair value. Market price observability is impacted by a number of factors, including the type of investment and the characteristics specific to the investment. Investments with readily available active quoted prices or for which fair value can be measured from actively quoted prices generally will have a higher degree of market price observability and a lesser degree of judgment used in measuring fair value.

10

## VARIO CORP.
## NOTES TO FINANCIAL STATEMENTS
### DECEMBER 31, 2017

Investments measured and reported at fair value are classified and disclosed in one of the following categories:

Level 1 – Quoted market prices (unadjusted) are available in active markets for identical investments as of the reporting date. The types of investment included in Level 1 are listed equities and securities.

Level 2 – Pricing inputs are other than quoted prices in active markets, which are either directly or indirectly observable as of the reporting date, and fair value is determined through the use of models or other valuation methodologies. Investments which are generally included in this category are less liquid and restricted equity securities.

Level 3 – Pricing inputs are unobservable for the investment and include situations where there is little, if any, market activity for the investment. The inputs into the determination of fair value require significant management judgment or estimation. Investments that are included in this category generally are investments in private companies.

In determining the appropriate levels, the Company performs analysis of the assets and liabilities that may be subject to fair value measurements. There were no level of inputs for any assets or liabilities held by the Company at December 31, 2017.

**_Prior period reclassifications_**

Certain amounts in prior period have been reclassified to conform with current period presentation.

### Note 3 – DEPOSIT FOR INVENTORY PURCHASES

On December 31, 2017, the Company made deposit for inventory purchase to one vendor. The balance as of December 31, 2017 is $136,897.

11

Objection Exhibit 8 Page 0058

**VARIO CORP.**
**NOTES TO FINANCIAL STATEMENTS**
**DECEMBER 31, 2017**

### Note 4 - PROPERTY AND EQUIPMENT, NET

*Property and Equipment*

At December 31, 2017, property and equipment consist of the following:

| | | |
|---|---|---:|
| Molding and machinery | $ | 696.750 |
| Tooling equipment | | 652.467 |
| Furniture and equipment | | 47.308 |
| Computer and Printer | | 24.243 |
| Total cost | | 1,420,768 |
| Less: accumulated depreciation | | (586,752) |
| Property and equipment, net | $ | 834,016 |

Total depreciation expenses related to property and equipment for the year ended December 31, 2017 was $320,048.

### Note 5 - BANK LINE OF CREDIT

The Company has signed a secured revolving line of credit with a bank in the amount of $1,250,000, with an extended maturing date through January 31, 2017. Interest is payable monthly at fixed rate 4.50%. All borrowing are collateralized by substantially all of the assets of the Company, and guaranteed by Company's stockholder and its affiliated company for the full amount of $1,250,000. The line of credit also requires the Company's stockholder to subordinate the loan up to the amount of $1,250,000. In May of 2017, the company renewed its line of credit with increased amount to $2,500,000, which expires on December 31, 2018. Interest is payable monthly at the rate of prime plus 0.25% with 4.00% minimum, 5% currently. The loan is secured by the Company's assets, and guaranteed by Company's stockholder. The new line of credit also requires the Company's stockholder to subordinate the loan up to the full amount of $2,000,000. As of December 31, 2017, the Company has not yet funded and utilized the new $2,000,000 revolving line of credit. As of December 31, 2017, the Company was in compliance with those financial covenants.

12

## VARIO CORP.
### NOTES TO FINANCIAL STATEMENTS
### DECEMBER 31, 2017

### Note 6 - COMMITMENTS AND CONTINGENCIES

***Operating Expense***

The Company has entered into agreements to lease corporate and oversea offices and warehouse space, with leases expire on various dates.

Total aggregate future minimum payments under the lease agreements are as follows:

| Year ending December 31, | | |
|---|---|---|
| 2018 | $ | 81,340 |
| 2019 | | 6,590 |
| | $ | 87,930 |

Rent expense for the year ended December 31, 2017 totaled $104,085.

***License Agreement***

The Company has entered into a license fee agreement to market and sell under certain trademark name of its affiliated company through December 31, 2026.

Total aggregate future minimum payments under the license fee agreement is as follows:

| Year ending December 31, | | |
|---|---|---|
| 2018 | $ | 20,000 |
| 2019 | | 20,000 |
| 2020 | | 20,000 |
| 2021 | | 20,000 |
| 2022 and there after | | 100,000 |
| | $ | 180,000 |

License fee expense for the year ended December 31, 2017 totaled $20,000.

### Note 7 - RELATED-PARTY TRANSACTIONS

During 2016, the Company incurred several related parties transactions and are indicated as follows:

***Payable to related party***

| | | December 31, 2017 |
|---|---|---|
| Meilo Creation LLC | $ | 9,300 |

13

## VARIO CORP.
## NOTES TO FINANCIAL STATEMENTS
## DECEMBER 31, 2017

### a) License fee payable due to affiliated company

The Company's affiliated company, Meilo Creation LLC, has signed with the Company a license fee agreement to use its trademark name and provide consulting and training support. The license fee is $20,000 per year. Unpaid license fee at December 31, 2017 amounted to $9,300.

### b) Interest payable due to related parties

During the year 2017, individual related parties and Company's shareholder have loaned money to the Company. The interest was accrued and based on the term 4.25% per annum. As of December 31, 2017, aggregated interest payable balance was $89,075.

### c) Subordinated note payable, stockholder

During the year 2017, the Company's stockholder has lent money to the Company. The interest was accrued and based on the term 4.25% per annum. As of December 31, 2017, the note payable balance was $2,017,756.

### *Interest Expense to related parties*

For the year 2017, Company's shareholder has lend money to the Company. The interest was accrued and based on the term 4.25% per annum. As of December 31, 2017, the aggregated interest expense amount was $89,075.

### Note 8 - MAJOR CUSTOMERS

During the year ended December 31, 2017 the Company derived total net revenues of approximately $10,287,000, of which 77% of total net sales is derived from three major customers. Each of these three customers accounted for more than 10% of the revenue of the year.

### Note 9 - SUBSEQUENT EVENTS

The management of the Company has evaluated subsequent events through May 31, 2018, which is the date of the financial statements were available to be issued. There were no material subsequent events that require recognition or additional disclosure in the financial statement for year ended December 31, 2017.

14

**VARIO CORP.**
**NOTES TO FINANCIAL STATEMENTS**
**DECEMBER 31, 2017**

**Supplemental Information – Operating Expenses Schedule**

| Operating expenses | | |
|---|---:|---:|
| Salaries | | |
| Officers | 55,577 | 0.4% |
| Office | 447,059 | 3.3% |
| Payroll taxes | 46,165 | 0.3% |
| Advertising and promotion | 4,250 | 0.0% |
| Bad debt expense | - | 0.0% |
| Bank and merchant fees | 15,577 | 0.1% |
| Commission | 350,405 | 2.6% |
| Consulting fee | 75,800 | 0.6% |
| Co-op marketing expense | 38,018 | 0.3% |
| Depreciation and amortization expenses | 400,478 | 3.0% |
| Dues and subscription | 26,680 | 0.2% |
| Employee benefits | 25,067 | 0.2% |
| Freight-out and shipping expense | 9,238 | 0.1% |
| Inspection fee | 2,874 | 0.0% |
| Insurance | 46,166 | 0.3% |
| Legal and professional fees | 58,838 | 0.4% |
| License fee | 559 | 0.0% |
| Meals and entertainment | 1,656 | 0.0% |
| Office expenses | 98,234 | 0.7% |
| Rent | 104,085 | 0.8% |
| Repair and maintenance | 12,443 | 0.1% |
| Research and Development | 327,458 | 2.4% |
| Sample expense | 6,932 | 0.1% |
| Storage fee | 16,166 | 0.1% |
| Telephone | 14,102 | 0.1% |
| Temporary labor | 95,589 | 0.7% |
| Travel | 91,882 | 0.7% |
| Utilities | 14,911 | 0.1% |
| Warehouse supplies | 7,780 | 0.1% |
| **Total operating expenses** | **2,393,989** | **17.9%** |

15

# Elmer Dean Martin III

## A Professional Corporation

1300 VALLEY VISTA DRIVE, SUITE 201
POST OFFICE BOX 4670
DIAMOND BAR, CALIFORNIA 91765
(909) 861-6700 (TELEPHONE)
(909) 860-3801 (FAX)
elmer@bankruptcytax.net (E-MAIL)

### December 20, 2017

Hsieh Yi-ting
Aka Tammy Hsieh
Aka Yi T Hsieh
Aka Yiting Hsieh
1582 Pleasant Hill Drive
Chino Hills, California 91709

Shuchuan Eva Shih
1582 Pleasant Hill Drive
Chino Hills, California 91709

Shuchuan Eva Shih
Chief Executive Officer
Vario Corp.
14020 Central Avenue, Suite 590
Chino, California 91710

Shuchuan Eva Shih
Meilo Creation, LLC
14020 Central Avenue, Suite 590
Chino, California 91710

Hunghu Chen
Meilo Creation LLC
17037 Green Drive
City of Industry, California 91745

Shuchuan Eva Shih
Deerport Décor Corp.
14020 Central Avenue, Suite 590
Chino, California 91710

1t13107

Objection Exhibit 9 Page 0063

Vario Corp. Persons
December 20, 2018
Page | 2

Shuchuan Eva Shih
13089 Peyton Drive, #C578
Chino Hills, California 91709

Lo & Lo LLP
506 North Garfield Avenue, Suite 280
Alhambra, California 91801

Business Merchant Funding
1022 Avenue M
Brooklyn, N.Y. 11230

Ace Funding Source LLC
366 North Broadway
Jericho, N.Y. 11753

Kings Cash Group
30 Broad Street, Suite 1201
New York, N.Y. 1004

Association Company
P.O. Box 2576
Springfield, Ill. 62708

Yellowstone Capital West, LLC
116 Nassau Street, Suite 804
New York, New York 10038

Jason Wu
Meilo Creation LLC
17037 Green Drive
Industry, California 91745

SPG Advance, LLC
1221 McDonald Avenue
Brooklyn, New York 11230

Influx Capital LLC
32 Court Street, Suite 205
Brooklyn, N.Y. 11201
winword/letters/1t13107

Vario Corp. Persons
December 20, 2018
Page | 3

ML Factors
456A Central Avenue, #128
Cedarhurst, N.Y. 11516

Fora Financial West, LLC
519 8th Avenue
11th Floor
New York, N.Y. 10018

Wesley Lu
WLCC Accountancy Corp.
1108 South Baldwin Avenue
Arcadia, California 91007

Carl Chen
Aka Yunshun Chen
Aka Yun Shen Chen
Vario Corp.
14020 Central Avenue, Suite 590
Chino, California 91710

Cathay Bank
Attn: R-16
9650 Flair Drive
El Monte, CA 91731

CTBC Bank
Attn: Operations Support
801 South Figueroa Street, Suite 2300
Los Angeles, California 90017

Bank of America N.A.
Legal Order Processing
800 Samoset Drive
Newark, Delaware 19713

Vario Corp. Persons
December 20, 2018
Page | 4

JP Morgan Chase N.A.
National Bankruptcy Notification
Mail Code: TX1-0060
14800 Frye Road, Fl. 2
Fortsworth, TX 76155-2732

Adam McFarlane
1202 SW Edinburgh
Bentonville, Arkansas 72712

JiangXi TaiLong Optronics Corp.
Tai Long Holdings Co, Ltd.
Carl Chen
Aka Yunshun Chen
Aka Yun Shen Chen
14020 Central Avenue, Suite 590
Chino, California 91710

Shu Chuan Shih
Hunghui Carl Chen
Aka Hunghu Carl
Culwen Lin
Jin Teng Huang
Hunag Hui Chen
Meilo Creation LLC
13851 Roswell Avenue
Chino, California 91710
Also
17037 Green Drive
City of Industry, California 91745

Lexint Law Group, APLC
13300 Crossroads Parkway North, Suite 100
City of Industry, California 91746

Grand Wisdom Co., Ltd.
2F., No.367-1
Sec. 2 Zhongshan Road
Banqiao District
New Taipei City, Taiwan
winword/letters/1t13107

Vario Corp. Persons
December 20, 2018
Page | 5

Also
Grand Wisdom Co.
NO. 39 Set 2 Hankou Street
Wanhua Dist.
Taipei, Taiwan

Re:   In re Vario Corp.
      Bankruptcy Case No. 6:18-bk-19730-WJ

Dear Sir or Madam:

This is a request by East West Bank, a depositary and lending financial institution the accounts of which are insured by the Federal Deposit Insurance Corporation, pursuant to Local Rule 2004-1 of the United States Bankruptcy Court for the Central District of California requesting a conference with you for the purpose of arranging for a mutually agreeable date, time, place and scope of an examination and production regarding Vario Corp. and entities controlled by Shuchuan Eva Shih and her husband and their financial transactions, through entities or individually, during the period from January 1, 2016 through the date hereof.

The scope of the examination will include production of all documents, tangible or electronic, in your possession or under your control relating to the above matter. It may, depending on the production, also involve your testimony. The production and examination will take place at a location to be agreed upon, or in the absence of an agreement at a location specified by me, and any testimony will be recorded by a court reporter under oath.

The examination will be ordered by the United States Bankruptcy Court for the Central District of California and will be conducted in accordance with the rules of that court. Please contact me by January 5, 2019 as to your disposition of this request.

Best,

Elmer Dean Martin III

winword/letters/1t13107

Objection Exhibit 9 Page 0067

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**1300 Valley Vista Drive, Suite 201**
**Diamond Bar, CA 91765**

A true and correct copy of the foregoing document entitled (*specify*):  ***East West Bank's Objection to Debtor's Motion for Use of Cash Collateral; Declarations of Frank Chan and Elmer Dean Martin III*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ***December 28, 2018*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Abram Feuerstein    abram.s.feuerstein@usdoj.gov**
- **Everett L Green    everett.l.green@usdoj.gov**
- **Michael Y Lo    bklolaw@gmail.com, jaylo1225@gmail.com**
- **Elmer D Martin    elmermartin@gmail.com**
- **United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ***December 28, 2018*** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

<u>Overnight Mail</u>
Honorable Wayne Johnson
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 384 / Courtroom 304
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| *12/28/2018* | *Cynthia P. Miller* | */s/ Cynthia P. Miller* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.